In re the MARRIAGE OF Mary
P. PETERSEN and Ronald
L. Petersen.

Mary P. Petersen, Petitioner–Appellant,

and

Ronald L. Petersen, Jr., Respondent–Respondent.

Nos. 22599, 23130.

Missouri Court of Appeals,
Southern District,
Division Two.

July 25, 2000.

Cheri Cole Simpkins, McElligott, Ewan, Hall & Kimminau, Independence, for Appellant.

Wiliam G. McCaffree, McCaffree, Landoll & Slaby, Nevada, MO, for Respondent.

JAMES K. PREWITT, Judge.

Mary P. Petersen (Wife) appeals the judgment of the trial court alleging error in its division of marital property, and in the inclusion of gift money from Wife's parents in calculating child support payments due from Ronald L. Petersen, Jr. (Husband). Wife also appeals from a contempt order entered by the trial court after her failure to make mortgage payments resulted in foreclosure of two houses owned by the parties. The appeals were consolidated.

The parties were married in Encino, California on June 8, 1991. On December 4, 1996, they separated. Wife filed a petition for dissolution of marriage with the Jasper County Circuit Court on December 6, 1996. At that time, Wife and the two minor children moved from Carthage, Missouri, to the Kansas City area. The parties appeared before the circuit court on April 10 and 13, 1998, for trial of the dissolution proceeding.

A judgment was filed on April 24, 1998. Husband filed a motion to modify on April 28, 1998, followed by Wife's response and separate motion to modify. A post-trial hearing was held on July 17, 1998, and on July 27, 1998, the trial court set aside its first judgment and entered a new judgment. Wife filed a subsequent post-trial

motion, which was heard by the court on August 14, 1998. A comprehensive Judgment Entry was filed on September 3, 1998. The September judgment is the subject of appeal no. 22599.[1]

In the September judgment, the court found that Husband's monthly gross income was $2,322, and Wife's monthly gross income from employment was $2,424. The court also found that wife had an additional income from the "Lemon trust and [had] received a relatively stable additional income from her parents of approximately $20,000 annually during the majority of the years of marriage." In its property division, the trial court awarded a residence located on South McGregor in Carthage to Husband. Husband was ordered to pay the mortgage on the property and hold wife harmless from any expense associated therewith.

Wife was awarded a residence on Grand Street, also in Carthage. Both parties agreed that the Grand Street property should be sold. The property had been listed with a real estate agent during the parties' separation, and the asking price had been reduced from $115,000 to $99,500. The property did not sell, however, and it was awarded to Wife together with a first and second mortgage. The second mortgage "straddled" the McGregor Street property, meaning that both properties secured the mortgage.

Including the residences, the marital property was divided as follows:

Awarded to Husband

| | Debt | Value | Equity |
| --- | --- | --- | --- |
| Residence and carriage house S. McGregor, Carthage, Missouri | $41,108 | $80,000 | $38,892 |
| 1992 Honda Civic VX | –0– | 5,975 | 5,975 |
| Boatman's Bank checking account | | | 300 |
| Navy Federal Credit Union account | | | 30 |
| Husband's list household/personal | | | 14,497 |

---

1. Because of the timing of the foreclosure on the real estate, it is relevant that Wife was awarded the residence on Grand Street and the first and second mortgages on that property by the judgment dated July 27, 1998.

| | Debt | Value | Equity |
|---|---|---|---|
| "Neither party wants" items | | | 660 |
| "Both parties want" items | | | 8,865 |

TOTAL VALUE PROPERTY AWARDED
          TO HUSBAND         $69,219

Awarded to Wife

| | Debt | Value | Equity |
|---|---|---|---|
| Residence at 1427 Grand St. Carthage, Missouri | $60,132 | $99,500 | |
| | 37,634 | | $ 1,734 |
| 1994 Mercury Villager | 8,166 | 14,650 | 6,484 |
| Bank of America checking acct. | | | 342 |
| Glendale Federal savings acct. | | | 200 |
| United Missouri Bank checking acct. | | | 200 |
| Payne Webber check | | | 4,508 |
| Wife's household/personal | | | 25,315 |
| "Neither party wants" items | | | 2,030 |
| "Both parties want" items | | | 6,430 |

TOTAL VALUE PROPERTY AWARDED TO WIFE   $47,243

The final judgment awarded Wife child support of $629 monthly. The court did not accept either Form 14 provided by the parties, but prepared its own worksheet. On the Form 14 prepared by the court and attached to the judgment, the amount of monthly gross income for Wife was $3,971, and the amount of monthly gross income for Husband was $2,322. Reasonable work-related child care cost was found to be $681 per month.

Wife did not make the payments on the first or second mortgage secured by the Grand Street property, and a foreclosure sale was held on October 29, 1998 The mortgagee foreclosed the first mortgage on the Grand Street property at a sale for $62,898. The mortgagee then foreclosed on the second mortgage, and forced a foreclosure sale of the McGregor Street property. The McGregor property sold for $41,466.

Wife's first point alleges trial court error in division of marital property, asserting that the trial court did not properly consider all relevant factors in § 452.330.1, RSMo 1994.

■■■ Review of this action is set forth in Rule 84.13(d). In reviewing the judgment of a court-tried case, this court views the evidence and permissible inferences drawn therefrom in a light most favorable to the judgment. The judgment will be affirmed unless it is against the weight· of the evidence, there is insufficient evidence to support it, or it erroneously declares or applies the law. *In re Marriage of Lafferty,* 788 S.W.2d 359, 361 (Mo.App.1990).

■■■ The trial court has considerable discretion in dividing marital property. *Dardick v. Dardick,* 670 S.W.2d 865, 869 (Mo. banc 1984). The trial court's division of property is presumed correct and appellant bears the burden of overcoming this presumption. *Bixler v. Bixler,* 810 S.W.2d 95, 100 (Mo.App.1991). Equal division of property is not required, but the division of property should be fair, taking into account the factors enumerated in § 452.330.1, RSMo 1994. *Carter v. Carter,* 940 S.W.2d 12, 16 (Mo.App.1997).

■■■ One statutory factor to consider in dividing marital property is the contribution of each spouse to the acquisition of marital property. § 452.330.1(2). In this case, it was uncontroverted that Wife contributed $17,300 from her inheritance from her grandmother as a down payment on the McGregor residence. The trial court should have taken into consideration these separate funds Wife contributed to marital property when awarding the property to Husband. *See Abrams v. Abrams,* 787 S.W.2d 902, 903–04 (Mo.App.1990), and *Falvey v. Falvey,* 727 S.W.2d 459, 461 (Mo.App.1987). Even though her separate property may have been transmuted into marital property, such does not "preclude the trial court from considering the premarital contribution in dividing the marital property." *Gremaud v. Gremaud,* 860 S.W.2d 354, 357 (Mo.App.1993).

The application of the remaining statutory factors do not convince us that the trial court abused its discretion in the division of the marital property, other than Wife's contribution of funds from her inheritance.

Wife's third point also alleges error regarding the September judgment. Wife claims the final judgment was "not proper"

because the trial court excessively deviated from the presumed child support amount and imputed gift income to Wife from parents. The trial court did not deviate from the presumed child-support amount calculated on the court's own Form 14. Therefore, the ruling to be considered is whether the court erred in including the financial support from parents in Wife's monthly gross income.

The trial court found that Wife has additional income from the "Lemon trust" and has received a relatively stable additional income from her parents of approximately $20,000 annually during the marriage. Wife asserts that the trial court erred when it averaged an additional income of $1,666 per month to Wife in calculating the amount of child support. Wife argues that the court abused its discretion by not applying Rule 88.01 in its characterization of gross income. Quoting from the Directions for Form 14, Wife asserts that because the guidelines do not mention gift money from a third party, it was error to consider gift money in gross income. This argument is not conclusive because the Directions for "Line 1: Gross Income" begin with the language that gross income "includes, but is not limited to [listed sources]". The list therefore, is neither exhaustive nor exclusive.

Wife's mother testified at the trial held on April 10, 1998, that three times she and her husband had gifted Wife and her family $20,000 to help them buy a home or to establish a "nest egg." The gifts were made in 1993, 1995, and 1996. She also testified that since the parties had separated in December, 1996, she and her husband had provided Wife financial assistance "by the month" to pay rent, provide "extra money" to send the children to school, to buy food, and pay attorneys' fees. The monthly amounts have averaged $2,000 during the seventeen months the parties had been separated. Wife's father testified that he and his wife were "helping Mary and the children," and that he intended to continue "[a]s long as [he is] working and able to do so."

■ Child support (and maintenance) awards require consideration of current economic circumstances, *Morgan v. Ackerman*, 964 S.W.2d 865, 869 (Mo.App.1998), and the financial resources of the parents. § 452.340.1(2). The term "gross income" is not defined by the rule or accompanying form, but the Directions for Completion of Form 14 provide guidance as what should be included as gross income. *Buckner v. Jordan*, 952 S.W.2d 710, 711 (Mo.banc 1997). A "relevant factor" which may justify deviation from the presumptive child support amount is "the financial resources and needs of the parents." Rule 88.01(b). *Id.* at 712.

■ The trial court should consider not only a parent's earnings for services rendered, but rather all resources available to him or her. *In re Marriage of Chorum*, 959 S.W.2d 900, 905 (Mo.App. 1997). § 452.340.1. No resource available to a parent is exempt from the obligation to support the children, including the largesse to the parent from a third party. *Margolin v. Margolin*, 796 S.W.2d 38, 44 (Mo.App.1990). *See also Jung v. Jung*, 886 S.W.2d 737, 741 (Mo.App.1994), and *Taranto v. Missouri Dep't of Soc. Services*, 962 S.W.2d 897, 900–901 (Mo.App.1998).

While one's salary is usually the most important factor in one's ability to pay, the court may consider other resources for maintenance and child support; nothing is exempt from these primary calls upon a parent's resources. *Sturgeon v. Sturgeon*, 849 S.W.2d 171, 175 (Mo.App.1993). The opinion also notes, in reference to the custodial parent, that it "is true" that a court must consider all sources of income in making support determinations. *Id.* at 176.

■ We cannot conclude that the trial court abused its discretion in finding that the funds contributed to Wife by her parents should be considered in monthly gross income for purposes of calculating child

support. In this instance, the financial assistance from Wife's parents has been a regularly occurring event, marked by a check being deposited into her checking account at the end of each month. The established pattern of financial assistance, in this case, is sufficient to support the judgment. We can envision other instances where the assistance has not been regular, and the future of payments dubious, where it would be inappropriate to include similar gifts in a parent's income. We also note that Wife can later seek a modification of the child support award if her parents do not continue the financial gifts. *See Margolin,* 796 S.W.2d 38.

Other states have considered the issue of inclusion of gifts, both financial and in-kind, from relatives or companions. For cases that have found such gifts should be included for purposes of calculating child support, see *Unkelbach v. McNary,* 244 Conn. 350, 710 A.2d 717 (1998), *Ordini v. Ordini,* 701 So.2d 663 (Fla.App.1997), *Allred v. Allred,* 130 Md.App. 13, 744 A.2d 70 (2000), *Carlson–Subik v. Subik,* 257 A.D.2d 859, 684 N.Y.S.2d 65 (1999), and *Cook v. Eggers,* 593 N.W.2d 781 (N.D.1999). Other cases that have refused to consider such resources include: *Shiveley v. Shiveley,* 635 So.2d 1021, 1022 (Fla.App.1994)(gifts which have not yet been received are purely speculative in nature, mere expectancies, and as such are not properly included in the calculation of income for purposes of determining the need for, or the ability to provide, support), *Sol v. Sol,* 656 So.2d 206 (Fla.App.1995), *Jones v. Jones,* 679 So.2d 1270 (Fla.App.1996), and *Huebscher v. Huebscher,* 206 A.D.2d 295, 614 N.Y.S.2d 524 (1994).

■ Finally, Wife's second point alleges error regarding the contempt order entered against her on June 16, 1999. The Court ordered Wife to reimburse Husband for lost equity on the McGregor house in the amount of $41,466 and to pay Husband the sum of $7,775 for attorneys' fees. Wife claims the contempt order was improper because she demonstrated "she did not have the ability to comply with the payments of the mortgages." [2]

■ The party seeking to defend against a contempt charge has the burden of proving inability to make the payments, and that being in such position did not occur intentionally and contumaciously. *Owsley v. Owsley,* 693 S.W.2d 897, 898 (Mo.App.1985). When a former spouse proves that the other has failed to make required payments under a dissolution decree, a prima facie case of contempt has been shown. *Id.* The trial court is free to believe or disbelieve a witness as it has the opportunity to judge the credibility of the witness. Rule 84.13(d)(2). *In re Marriage of T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654 (Mo. banc 1989).

■ In this case, Husband made a prima facie case of contempt by showing that a foreclosure took place on the mortgages for which Wife was assigned responsibility under the prior judgment. It became Wife's burden, therefore, to prove that she was unable to make the required payments. It is apparent, after reviewing the transcript of the contempt hearing, and the contempt order entered by the trial court, that Wife failed to convince the trial court that she was unable to make the mortgage payments. Submitted into evidence at the contempt hearing was a letter written on behalf of the mortgagee showing that the amount due to reinstate the first mortgage was $4,350.14. Additionally, the mortgagee was willing to "recast" the second mortgage to forestall a foreclosure sale and allow time for the house to be sold on the open market. The trial court specifically found that Wife's disobe-

2. Where a contempt proceeding is brought to enforce a civil remedy, it assumes the nature of an adversary proceeding and the decision of the court becomes a final judgment and may be appealed. *In re Marriage of Hunt,* 933 S.W.2d 437, 448 (Mo.App.1996); *In re Blankenship,* 553 S.W.2d 307, 308 (Mo.App. 1977). The contempt order in this case is a final, appealable judgment.

dience of the previous judgment was intentional, contemptuous and inexcusable, and that she had the ability to avoid the foreclosure sales. We do not find that Wife met her burden to prove her inability to make mortgage payments.

In accordance with the reasoning explained in our discussion under Wife's first point, Wife should have received credit for the sum of money contributed from her inheritance toward the purchase of the McGregor home. This is necessary as a recognition of her contribution to achieve that purchase and to have a just division of property. The September judgment is thus modified, pursuant to Rule 84.14, to award Wife $17,300.00 to be paid from Husband with interest, as provided by law from the date of the September judgment.[3]

The September judgment is affirmed as so modified in the preceding paragraph. The judgment of contempt is affirmed.

GARRISON, C.J., and BARNEY, J., concur.

---

3. The effect of this at present may be that Wife will receive a credit toward the amount she owes Husband under the contempt order.