Cheryl K. MYERS, Appellant,

v.

Don D. MYERS, Respondent.

No. 23735.

Missouri Court of Appeals,
Southern District,
Division Two.

June 14, 2001.

Ted Von Willer, Jr., Springfield, for Appellant.

Carr L. Woods, Monett, for Respondent.

BARNEY, Chief Judge.

Cheryl K. Myers ("Wife") appeals from a first amended judgment ("judgment") which dissolved her marriage with Don D. Myers ("Husband"), arguing that the trial court abused its discretion in awarding Husband the bulk of marital property, while not awarding her maintenance or attorney's fees. Wife also maintains that the judgment was against the weight of the evidence. We affirm.

Husband and Wife were married on October 10, 1989. Husband had been married twice previously, while Wife had five previous marriages. Husband owned substantial assets prior to marriage, including several tracts of land consisting of a 45 acre farm known as the "Ray Farm;" 53 acres known as the "Heatherwood Property;" 60 acres known as the "McClure Farm;" and 23 acres, including a workshop and a house where Husband resided, known as the "Doty Property." Husband also owned two automobiles, farm equipment and two small herd of Limousin and Simmental cattle. The assets Wife brought into the marriage consisted of a

few pieces of furniture and an automobile that Husband had given her as a gift.

Wife moved into Husband's residence prior to their marriage and they continued to live there until 1994, when Husband sold the 23 acre; the 60 acre, and the 45 acre tracts of land to Skip and Cathy White for $219,000.00, inclusive of a down payment and a promissory note for the balance of $150,000.00, made jointly payable to Husband and Wife. In turn, the down payment was used to purchase another home in Shell Knob, Missouri, for $217,000.00, with the note payments used to make payments on the newly purchased home titled jointly between the parties. Additionally, Husband and Wife purchased a house in Cassville, Missouri, from Eugene and Rose Brooks for $27,500.00 for Husband's mother to reside in, but this house was later used as rental property.

In January of 1997, Husband's 53 acre farm was sold to Michael and Elizabeth Schlichtman for $93,600.00, inclusive of $23,400.00 paid in cash and the balance of $70,200.00 payable in the form of a jointly held promissory note in favor of Husband and Wife. In early December 1997, Husband returned from an extended trip to Montana to find the locks had been changed on the home in Shell Knob and several pieces of his private mail had been rummaged through, including a personal ATM card. Subsequently, Wife filed for dissolution of marriage on December 8, 1997, in Barry County.

In its judgment, the trial court awarded Husband the home in Shell Knob along with the bulk of the remaining assets, totaling approximately 88% of the marital

estate. Wife was awarded the rental house and other assets amounting to the remaining 12% of the marital estate. The trial court denied Wife's request for maintenance and ordered each party to pay his or her own attorney's fees.

 This Court's review of the trial court's judgment is governed by Rule 84.13(d), and will be affirmed unless it is not supported by substantial evidence, against the weight of the evidence, or erroneously applies the law.[1] *In re Marriage of Thompson*, 24 S.W.3d 751, 753–54 (Mo. App.2000); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "In reviewing the judgment of a court-tried case, this court views the evidence and permissible inferences drawn therefrom in a light most favorable to the judgment." *In re Marriage of Petersen*, 22 S.W.3d 760, 763 (Mo. App.2000). An appellate court should set aside a judgment with caution and only with a firm belief that it is against the weight of the evidence. *See In re Marriage of Gibson*, 23 S.W.3d 686, 689 (Mo. App.2000).

## I.

 In her first point of error, Wife maintains that the trial court erred in awarding her 12% of marital property, while awarding 88% of the marital property to Husband. She maintains that this division was against the weight of the evidence and was so heavily weighted in favor of Husband as to amount to an abuse of discretion. Wife contends the trial court did not properly take into account all relevant factors enumerated in section 452.330, RSMo Cum.Supp.1998.[2] We do not agree.

---

1. Rule references are to Missouri Court Rules (2000), unless otherwise noted.

2. Section 452.330.1 lists five factors that the trial court must consider in dividing marital property. These include:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods

The trial court is afforded broad discretion in dividing marital property. *Petersen,* 22 S.W.3d at 763. "Awarding one party a considerably higher percentage of the marital property than the other party is not *per se* an abuse of discretion." *In re Marriage of Betz,* 880 S.W.2d 618, 623 (Mo.App.1994). This court will interfere with the trial court's decision only if the division of property is so heavily weighted in favor of one party as to amount to an abuse of discretion. *Gibson,* 23 S.W.3d at 689; *Lance v. Lance,* 979 S.W.2d 245, 248 (Mo.App.1998). Equal division of property is not required, but the division of property should be reasonable, taking into account the factors enumerated in section 452.330.1. *Petersen,* 22 S.W.3d at 763.

In the case before us, the trial court did not include in its final judgment any findings of fact and conclusions of law in determining the division of marital property, nor were they requested from either party. In the absence of such findings, our review is limited to a determination whether there was substantial evidence to support the trial court's decision, resolving all inferences in favor of its ruling. *Taylor v. Taylor,* 12 S.W.3d 340, 346 (Mo.App.2000); *Judy v. Judy,* 998 S.W.2d 45, 49 (Mo.App.1999).

Given the facts of this case, the most relevant statutory factor that the trial court had to consider in dividing the marital property was the contribution of each spouse to the acquisition of the marital property. § 452.330.1(2), RSMo Cum.

Supp.1998; *see also* footnote 3, *infra.* Our review of the record in this case shows that Husband was possessed of considerably more assets than Wife when they married. Even though much of this property was later transmuted into marital property, this does not "preclude the trial court from considering the premarital contribution in dividing the marital property." *Petersen,* 22 S.W.3d at 763 (quoting *Gremaud v. Gremaud,* 860 S.W.2d 354, 357 (Mo.App.1993)). Husband presented evidence that he owned several tracts of land prior to the marriage. The sales of Husband's tracts of land were the bases for the down payment of the marital home, the rent house, and other assets acquired during the marriage. Husband also testified that he received a retirement from his 26 years of service with the Missouri State Highway Patrol, retiring in March of 1992. During his marriage to Wife, he worked for the Highway Patrol only three years. Husband and Wife both testified that Wife did not bring any substantial assets into the marriage. While during the eight years the parties lived together Wife engaged in household chores and assisted with the cattle operation and in remodeling activities, her main source of outside income was from a used clothing store known as "Elite Apparel," which was established primarily with Husband's money. This latter entity, however, had ceased operations at the time of the dissolution of marriage action.

Wife points to several cases to support her contention that this Court should reverse the trial court when its ruling is

to the spouse having custody of any children;
(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and
(5) Custodial arrangements for minor children.
§ 452.330.1 RSMo Cum.Supp.1998.

against the weight of the evidence and is too heavily weighted in favor of one party. In one such case cited by Wife, *In re Marriage of V.A.E.*, 873 S.W.2d 262 (Mo. App.1994), the appellate court reversed a similar award where the wife was awarded 88% of the marital property. The marital home was awarded to the wife and amounted to approximately 75% of the marital property. *Id.* at 268. The appellate court ruled that no substantial evidence existed for such a disparate award, and that the division of property was arbitrary and unreasonable. *Id.* at 269. The appellate court premised its reasoning on the fact that there was no evidence suggesting that the wife had done more than the husband in contributing to the acquisition of marital property. *Id.* Furthermore, the appellate court observed that there was no evidence suggesting that husband's conduct was a greater factor than wife's in the failure of the marriage. *Id.* The present case is distinguishable from *V.A.E.*, in that the evidence did indicate that Husband's contributions to the acquisition of marital property far outweighed those of Wife. Further, the marriage of Wife and Husband did not occur early in their lives, as in *V.A.E.* The present case is more akin to *In re Marriage of Betz, supra.* In that case, the husband, in his early fifties, and wife, in her early forties, were married, each for a second time. *Betz,* 880 S.W.2d at 619. The husband had assets totaling over $300,000.00 that he brought into the thirteen year marriage,

while the wife brought $3,700.00 worth of assets into the marriage. *Id.* The trial court in that case awarded the husband roughly 65% of the marital assets, and the wife appealed this ruling. *Id.* at 621. The appellate court upheld the trial court's decision, noting that "[d]isparity in the value of marital property awarded each spouse is appropriate if the relevant factors, statutory or otherwise, justify an unequal division." *Id.* at 623.

Here, while there is a large disparity in the amount of marital property awarded to each party, as previously set out, there is evidence in the record to support the trial court's decision, despite the claim by Wife that it was an abuse of discretion.[3] Abuse of judicial discretion has been defined by the Missouri Supreme Court as an "untenable judicial act that defies reason and works an injustice." *Betz,* 880 S.W.2d at 623 (quoting *Moore v. Board of Education of Fulton Public School No. 58,* 836 S.W.2d 943, 948 (Mo. banc 1992)). "[I]f reasonable persons can differ about the propriety of the trial court's action, it cannot be said the court abused its discretion." *In re Marriage of Eskew,* 31 S.W.3d 543, 550 (Mo.App.2000). The division of marital property by the trial court "is presumed correct and appellant bears the burden of overcoming this presumption." *Petersen,* 22 S.W.3d at 763. We are not persuaded that Wife has met her burden in this regard. Point denied.

---

**3.** Much of the non-marital property awarded Husband was acquired prior to marriage or from assets possessed by Husband prior to the marriage. Additionally, Husband was ordered to assume a "Nations Bank–House mortgage" in the amount of $81,875.00 while Wife was ordered to pay three credit cards totaling $15,000.00. We also observe that Wife accused Husband of physically abusing her. Husband denied these accusations. Husband's attorney, in turn, produced over 50 daily recitals from Wife's diary for the period January 23, 1996, through October 22, 1996, wherein Wife had alternatively written entries in her diary showing an infatuation with a Luke Warren; having meetings with Mr. Warren at various times and places; wishing the death of Husband; praying that she become a widow, etc. Wife described these entries as basically therapeutic in nature, meant to relieve stress.

## II.

■ In its judgment the trial set out that:

The Court finds that Petitioner Wife has sufficient property, including marital property apportioned to her and is able to support herself through appropriate employment and after considering the relevant factors including those listed in Section 452.335.2 RSMo, [sic] orders no maintenance awarded and that same is non-modifiable.

In her second point, Wife posits that the trial court erred in not awarding her maintenance. She points out that during the course of the pending divorce the court entered a temporary maintenance award of $256.00 a month. She contends that her physical and financial circumstances have not improved during the course of the dissolution proceedings, and argues that she should not be expected to consume marital property awarded to her in order to support herself. Wife also claims that she is unable to afford housing and living expenses with the income she receives and asserts that Husband has adequate resources to provide her maintenance.

■ "Within the confines of the law and the evidence, the trial court has broad discretion in awarding maintenance." *Thompson*, 24 S.W.3d at 754. In deciding if a spouse is entitled to maintenance, the question before the court is whether the party seeking maintenance can meet his or her reasonable need through employment or property. *Id.* Where evidence exists to support a finding that the spouse requesting maintenance can meet his or her needs in this fashion, the denial of a request for maintenance will be upheld. *Id.* However, if evidence suggests that the party requesting maintenance is unable to meet his or needs and that maintenance is appropri-

ate, then this Court must consider the factors enumerated in section 452.335.2, RSMo 1994 and balance the reasonable needs of the spouse seeking maintenance with the other spouse's ability to pay. *Id.*; *In re Marriage of Baker*, 986 S.W.2d 950, 955 (Mo.App.1999).

In our review of the record, we observe that Wife testified that she had medical problems between July of 1999 and February of 2000, the span between the beginning and end of the trial. She stated that she had undergone surgery relating to ovarian cancer and additional repair work necessitated by previous hysterectomy surgery performed in 1975. While she also related that she would need further repair work arising from her 1975 surgery, she testified that she was "cancer free." Upon being questioned by Husband's counsel, Wife further disclosed that she had been treated with varicose vein injections during this same period of time, and also had lipo-suction surgery around her stomach in January of 2000, provided "as a Christmas gift from Mr. McDaniel."[4]

■ At trial, Wife submitted evidence, in the form of an exhibit, enumerating her monthly expenditures to be $1231.00 per month, including $300.00 per month for her attorney's fees for this action. She listed her income as $1000.00 per month plus $256.00 in temporary maintenance for a total of $1256.00 per month. When dealing with issues of maintenance, a trial court is not required to accept a party's statement of monthly expenses as a whole, even when the evidence is uncontradicted. *Thompson*, 24 S.W.3d at 755. Wife did not request findings of facts and conclusions of law pursuant to Rule 73.01(c), and the trial court made no findings of fact as to what Wife's monthly expenditures and income were at the time of trial. "All fact issues

4. Wife is manager of a business owned by Mr. McDaniel.

upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c); *see also Thompson,* 24 S.W.3d at 755; *Taylor,* 12 S.W.3d at 346–47.

Wife also testified that at the time of trial she was working as a manager of a store in Branson, Elite Repeat Apparel, which she had previously owned. Wife further testified that the present owner of this business provided her with a place to live and that she was compensated for her work as manager with whatever she needed. In response to a question as to how she was compensated, Wife testified at trial, "I am compensated with whatever I need. I basically have control of the checkbook and everything. I'm allowed to take whatever I need out, like a doctor bill or a prescription or groceries." In response to a question regarding her monthly income from working there, Wife replied, "it's approximately $1,000.00 per month." In its final judgment, the trial court awarded Wife the parties' house in Cassville, worth approximately $45,000.00, and as Wife testified, capable of producing income of $400.00 per month as a rental house.

Wife has the burden of overcoming a strong presumption that the trial court's maintenance award is correct. *Thompson,* 24 S.W.3d at 755. In our review of the record, we are not convinced that Wife has overcome that presumption, and find that the trial court committed no error in not awarding maintenance. *Id.* at 755–56. Point denied.

### III.

■ In her final point, Wife alleges trial court error in refusing to order Husband to pay her attorney's fees. She alleges that conduct by Husband between the time of separation and trial required

her to spend additional monies on attorney's fees; that her deteriorating health substantially affected her ability to earn income; and that she did not receive sufficient funds from the marital estate to pay her attorney.

■ Generally, the parties in a dissolution of marriage action are to pay for their own respective attorney's fees. *Thill v. Thill,* 26 S.W.3d 199, 208 (Mo.App.2000). Section 452.355.1, RSMo Cum.Supp.1998 permits, but does not require, the trial court to award attorney's fees, after taking into consideration all relevant factors. *Id.; Tracy v. Tracy,* 961 S.W.2d 855, 865 (Mo. App.1998). Requiring one party to pay the attorney's fees of the other dictates a showing of unusual circumstances justifying deviation from the normal rule that each party should bear his or her own litigation costs. *Thompson,* 24 S.W.3d at 756. The two factors that the trial court should consider are "the actions of the parties during the pendency of the action, and the parties' financial situation." *Thill,* 26 S.W.3d at 208; § 452.355.1, RSMo Cum.Supp.1998. The court is vested with broad discretion in awarding attorney's fees, and its ruling will be disturbed only upon a showing of abuse of discretion. *Id.*

Wife's argument that Husband engaged in conduct requiring her to expend additional funds on an attorney is not supported by the record. There were problems between the parties during the time of separation and final judgment, to the extent that both parties stipulated to a restraining order which required each party to stay away from the other. While Wife filed a motion for sanctions, the motion was never taken up by either party nor ruled on by the trial court. Wife also argues that her deteriorating health substantially affects her ability to earn the necessary income to pay her attorney. However, as noted earlier in the opinion,

testimony from Wife indicated that she was gainfully employed and able to earn a living. However, the fact that Husband's income exceeds Wife's does not compel an award of attorney's fees. *Thompson,* 24 S.W.3d at 756. Having reviewed the record in a light favorable to the judgment, we do not perceive either trial court error or abuse of discretion by the trial court in not awarding Wife's attorney fees. *Id.* at 757. Point denied.

The judgment is affirmed.

PREWITT, J., concurs.

GARRISON, J., concurs.