**Thomas A. ELROD, Jr., Respondent,**

**v.**

**Cherie Renee ELROD, Appellant.**

**No. 25924.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 28, 2004.

Thomas M. Benson, Lowther Johnson, Springfield, for Appellant.

Ronald D. White, Williams, Robinson, White, Rigler & Buschjost, P.C., Rolla, for Appellee.

ROBERT S. BARNEY, Judge.

Cherie Renee Elrod ("Wife") appeals the judgment of the Circuit Court of Phelps County dissolving her marriage to Thomas A. Elrod, Jr. ("Husband"). Wife raises three points of trial court error. The first two points center on the division of the parties' marital properties, and the third point premises trial court error in the denial of her request for maintenance. We commence our review with Point II for the sake of clarity.

The record reveals that Husband and Wife were married on December 31, 1989, and last separated on November 16, 2000.[1] Husband filed a petition for dissolution of marriage on December 5, 2000, alleging that the parties' marriage was "irretrievably broken." Subsequent to a hearing on November 7, 2002, the trial court dissolved the parties' marriage, but continued the determination as to the division of property, debts, maintenance and attorney's fees until later hearings, which were held on November 25, 2002; November 27, 2002; and, January 3, 2003.

The record reveals that at the time of the parties' marriage, Wife was employed as a cashier and stocker, and Husband owned a trucking business known as Elrod Truck Service.

In 1991, the parties' separated for a period of about six months, due chiefly to Wife's involvement with a man from St. Louis whose first name was Patrick. Husband filed for dissolution of the marriage, but the parties ultimately reconciled, and Wife returned to the marital home.

Wife, who suffers from osteogenesis imperfecta, a disease which causes the weakening of her bones, broke her hip in 1994 in a work-related accident and, although she "pretty well went back to normal activities," she did not return to working out-

1. There were no children born of the marriage.

side of the home.[2] Wife's hip and bone problems bothered her continuously throughout the parties' marriage.

Dr. Larry Marti, who has treated Wife's bone disease for a number of years, testified that he assisted Wife in applying for and obtaining Social Security Disability benefits; however, Dr. Marti further testified that he did not think there was any reason Wife could not attempt vocational rehabilitation or some sort of sedentary employment. There was also testimony, however, that despite her illness, Wife took long trips by automobile and airplane; went deer hunting and used a rifle; rode her jet ski; went swimming; performed yard work; performed normal housekeeping activities; cared for Husband's child from his previous marriage; danced; drank alcohol; and, engaged in sexual relations with other men.

Wife testified that during their marriage Husband alluded to having extra marital affairs of his own. Husband denied cheating on Wife and denied making any statements about having a girlfriend. Wife also testified regarding several incidents of abusive behavior on Husband's part. Husband admitted that in December of 2000 he kicked Wife following an argument, but denied Wife's other assertions of abuse.

The trial court entered its findings of fact and conclusions of law on July 8, 2003. In making its division of marital property and allocation of marital debts, the trial court awarded each party "over $149,000.00 net equity in marital property."

Husband was awarded $511,060.00 in marital properties and allocated $323,876.00 in marital debts. In an effort to equalize the property division, the trial court ordered Husband to pay Wife a lump sum of $37,304.00, thereby leaving Husband with a net marital equity of $149,880.00. Wife was awarded $191,219.00 in marital properties and was allocated $78,643.00 in marital debts which, combined with the equalizing distribution from Husband, left Wife with a net marital equity of $149,880.00.

In its division, the trial court found that "[w]hile both parties contributed to the acquisition of the marital property, the bulk of property was accumulated principally due to Husband's efforts in the operation, maintenance, expansion, upkeep and management of the sole proprietorship known as 'Elrod Truck Service'...." The trial court "also note[d] that Husband, without any contribution or assistance from Wife, reduced debt subsequent to commencement of these proceedings by over $70,000.00." Additionally, the trial court set out that "Wife did not, subsequent to recovering from her hip injury, regularly and materially contribute to the acquisition of marital property, although she was capable of such contribution even if such contribution may have been limited from time-to-time and to some degree by her health condition...."

Further, the trial court observed that "[a]lthough Husband admitted participation in physical altercations with Wife, those altercations all occurred at or near the time of their final separation", "were not as significant as Wife described in her testimony", and, "did not place any additional burdens on the already failed marriage...."

 The standard for reviewing a decree of dissolution is the same as in any court-tried action. *Bullard v. Bullard*, 929

---

**2.** The record shows that Wife received a worker's compensation award as a result of her injuries.

S.W.2d 942, 944 (Mo.App.1996). The decree must be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).[3] "We do not retry the case, rather we accept as true the evidence and reasonable inferences therefrom in a light most favorable to the prevailing party and disregard contradictory evidence." *McCallum v. McCallum,* 128 S.W.3d 62, 65 (Mo.App.2003). Additionally, we defer to the trial court's determinations of credibility in making our review. *In re Marriage of Colley,* 984 S.W.2d 163, 166 (Mo.App. 1998).

■ Appellate courts will only interfere with the trial court's division of property if "the division of property is so unduly weighted in favor of one party that it amounts to an abuse of discretion." *Shepard v. Shepard,* 47 S.W.3d 412, 417 (Mo. App.2001). "The division of property is presumed to be correct, and the party challenging the division bears the burden of overcoming the presumption." *In re Marriage of Pahlow,* 39 S.W.3d 87, 91 (Mo.App.2001).

■ In dissolving a marriage, the trial court awards each spouse his or her non-marital property, then divides the remaining marital property and debts in a reasonable manner after considering all relevant factors enumerated in section 452.330. *See Ballard v. Ballard,* 77 S.W.3d 112, 116 (Mo.App.2002). The trial court is vested with great flexibility in its division of marital property. *Shepard,* 47 S.W.3d at 417. There is no set formula concerning the weight given to the factors considered under section 452.330. *Kester*

*v. Kester,* 108 S.W.3d 213, 224 (Mo.App. 2003). The division need not be equal, but must be fair and equitable under the circumstances of the case. *Smithson v. Smithson,* 986 S.W.2d 939, 940 (Mo.App. 1999).

■ In her second point, Wife asserts that the trial court erred in awarding "a marital debt to Husband for future tax liability in the amount of $78,200.00." Wife maintains that this award was against the weight of the evidence because "Husband's expert testified that the liability would only occur upon liquidation of the trucking company assets" and "the trial court did not order liquidation of the assets nor was there any evidence presented at trial that any such liquidation was likely to occur." We agree.

In Schedule A, which was attached to the trial court's findings, the trial court, under the heading "Unsecured Debt", allocated to Husband the amount of $78,200.00 which it denoted as "[t]axes on asset liquidation."

At trial, the accountant for Husband's trucking company, Robert McKay ("McKay"), testified as an expert on the value of the trucking company's assets. McKay, in addition to preparing Husband's tax returns, was responsible for maintaining a depreciation schedule on the "rolling stock" belonging to the company. The record shows this rolling stock had consistently included a number of large trucks and trailers. McKay testified that "throughout the year [Husband] buys and sells assets" and at the end of the year Husband informs him of his business dealings so that McKay can prepare his taxes. McKay testified that, based on the num-

---

**3.** *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that Rule now appear in essentially the same form in Rule 84.13(d).

Rule references are to Missouri Court Rules (2003), unless otherwise indicated.
Statutory references are to RSMo 2000, unless otherwise indicated.

bers he had been provided for the rolling stock at the time of trial, "as far as fair market value is concerned, and comparing that to the book value of those assets, [he] determined that the liquidation of those assets at those values would incur a tax liability of $78,200."

In his dealings with Husband, McKay testified that Husband typically takes the maximum deductions allowed by law when he depreciates property. McKay further related that "from an accounting standpoint" it is "fair and reasonable to include and consider the tax burden those assets would have when looking at the overall value of those assets." However, McKay also acknowledged that he was unaware of any plans by Husband to liquidate the business. He noted that if Husband does not liquidate the business, the tax liability of $78,200.00 will not occur in this tax year, but will be borne in the year the individual assets are sold.

■ It has been long held that "[t]ax consequences are a factor to consider in dividing marital assets." *Homfeld v. Homfeld*, 954 S.W.2d 617, 621 (Mo.App. 1997). However, the trial court is not permitted "to make deductions to the marital estate for estimated tax liabilities absent sufficient evidence to support its findings." *Baldwin v. Baldwin*, 905 S.W.2d 521, 524 (Mo.App.1995).

Here, there is little evidence supporting the proposition that Husband intends to liquidate all of his trucking company assets such that he would incur a tax liability of $78,200.00 as a result. Indeed, Husband's own expert, McKay, pointed out that he was unaware of any plans by Husband to liquidate the business. Accordingly, the trial court's findings and determination allocating $78,200.00 to Husband as a marital debt is not supported by sufficient evidence. *Murphy*, 536 S.W.2d at 32. Wife's second point has merit. Accordingly, we

must reverse the trial court's division of property and remand for the trial court to make proper determinations concerning the marital property. *See Fletchall v. Fletchall*, 896 S.W.2d 523, 524 (Mo.App. 1995). The trial court, in its discretion, may take additional evidence in re-considering this matter.

■ We now turn to Wife's first point on appeal, where she essentially posits the trial court erred in adopting Husband's valuations of the parties' three bank accounts. Wife maintains that Husband failed to present evidence as to the values of all of their accounts except for Wife's savings account, which the trial court valued as of the date of separation. Additionally, she asserts that she presented values for the bank accounts as of the date of trial and that Husband did not refute her calculations. Therefore, Wife maintains that the trial court failed "to value the bank accounts reasonably proximate in time to when the property division was to become effective."

In its findings of fact and conclusions of law, the trial court awarded Wife three of the parties' bank accounts: a checking account at Maries County Bank valued at $3,300.00, a checking account at U.S. Bank valued at $2,200.00, and a savings account at U.S. Bank, valued at $17,892.00. Husband was awarded a checking account at Maries County Bank containing a balance of $79.00.

At trial, Husband testified that at the time of the parties' *separation* in November of 2000, Wife had a savings account at U.S. Bank that contained $17,892.00. He stated that "[m]ost of that money in that savings account was from the sale of ... real estate," that the money should still be in that account, and that he was requesting that the bank account be awarded to Wife in the property division. Further, account

balances for each of the parties' accounts were listed in Husband's Exhibits "2A" and "2B." These exhibits were introduced into evidence at trial "as an aid to the Court and as a summary of the testimony that [Husband] is going to be adducing."

We note that Wife's "Statement of Property," styled Exhibit "Q," and originally prepared by Wife for the November 7, 2002, dissolution hearing, was also received into evidence "as an aide to the Court and a summary of her testimony." In her tendered exhibit, Wife set out that the business checking account at Maries County Bank, which was awarded Husband, contained "[$]700.00 as of 9/21/02"; Wife's rental account at Maries County Bank contained "[$]1,071.90 as of 10/31/02"; and the U.S. Bank rental account contained $1,063.36. Wife also set out that her U.S. Bank savings account contained $700.00.[4]

The trial court adopted the account balances set forth in Husband's Exhibits "2A" and "2B." In its findings, the trial court specifically noted that it found "more credible the opinion of values given by Husband ... and does not accept as credible Wife's opinions of value...."

◼ We begin our review by noting that "[a] trial court is prohibited from entering a valuation of marital property not supported by any evidence at trial, but the trial court, nonetheless, enjoys broad discretion in valuing marital property." *Kirkham v. Kirkham,* 975 S.W.2d 500, 505 (Mo.App.1998).

On appeal, Wife now argues that "[a]s a matter of law, [Husband's testimony with-

out documentary evidence of the account values] is not sufficient evidence to establish the value of the account[s]."[5]

◼ Our review of the record reveals that neither Wife nor Husband offered any documentary evidence relating to the value of the accounts at the time of the property division. Wife testified as to the value of the accounts upon the date of dissolution and Husband testified as to the value of the accounts upon the date of separation—nearly three years before this matter came to trial. The general rule is that "the appropriate date for valuing marital property in a dissolution proceeding is the date of trial." *Wright v. Wright,* 1 S.W.3d 52, 62 (Mo.App.1999). "Thus, under this rule, if a marital asset does not exist at the time of trial, the trial court cannot value and include that asset in its division of marital property." *Conrad v. Conrad,* 76 S.W.3d 305, 314 (Mo.App.2002). "The logic behind this approach is straightforward because a trial court considering property in a dissolution proceeding 'cannot consider an asset for distribution as marital property, unless and until there is evidence that there is a marital asset subject to distribution.'" *Kester,* 108 S.W.3d at 222 (quoting *Conrad,* 76 S.W.3d at 315). When the asset has been consumed by one party for reasonable and necessary purposes, it will no longer be considered part of the marital property subject to division. *Cofer v. Price–Cofer,* 825 S.W.2d 369, 373 (Mo.App.1992).

Husband and Wife had "at least an equal burden to carry on the matter of

---

4. No bank statements were introduced into evidence by either party.

5. We note that with the exception of one case citation, Wife fails to cite this Court to any relevant authority in support of this or any of her other arguments under this point, nor does she explain the absence of relevant au-

thority. *See In re Marriage of Gerhard,* 34 S.W.3d 305, 307 (Mo.App.2001). In such a situation, this Court is justified in considering the point abandoned. *Baldwin v. Baldwin,* 109 S.W.3d 247, 251 (Mo.App.2003). Nonetheless, we have elected to review the record *ex gratia.*

evidence of value. . . ." *Buckner v. Buckner*, 912 S.W.2d 65, 69 (Mo.App.1995). Here, neither party carried that burden. There was simply no actual evidence as to the value of the bank accounts at issue and, as previously related, a trial court "cannot consider an asset for distribution . . . unless and until there is evidence that there is a marital asset subject to distribution." *Conrad*, 76 S.W.3d at 315.

Further, the evidence presented at trial by Wife suggests that at least a portion of the money was expended toward her living expenses during the pendency of the divorce. *See Kester*, 108 S.W.3d at 222. "Absent evidence that this [asset] existed [in a particular amount] at the time of trial, the trial court could not value or include that asset in its division of marital property." *Id.* at 223. Likewise, it could also be inferred that Wife may have squandered or secreted the bulk of the accounts, in view of the fact that Husband has testified he paid for Wife's living expenses and mortgages owed by the parties during the course of their separation. *See Wright*, 1 S.W.3d at 62 (holding that where a party has intentionally secreted or squandered a marital asset in anticipation of a marriage being dissolved, thereby reducing that party's property award by the squandered amount, the trial court may hold that party liable for the amount of the asset by awarding it to him or her in its division of the marital property).

As recognized in *Conrad*, in situations such as this, there is a "lack of a record" on the value of the bank accounts such that it does not allow for meaningful appellate review by this Court. *See Conrad*, 76 S.W.3d at 317. Therefore, in view of the fact that we are remanding the question of the tax liabilities on the rolling stock for further proceedings, we also reverse and remand the issue for the trial court to fully develop the record as to the value of the bank accounts "as close to the effective date of the division as possible." *McCallum*, 128 S.W.3d at 66; *see Taylor v. Taylor*, 736 S.W.2d 388, 391 (Mo. banc 1987). The trial court may, in its discretion, elect to hear additional evidence on the matter to determine if the assets were secreted or squandered or whether they were legitimately expended on living expenses by Wife. *See Kester*, 108 S.W.3d at 223.

In her third point, Wife asserts that the trial court erred in denying her request for maintenance. Specifically, she maintains that she presented evidence at trial that was sufficient to prove that she lacked sufficient property to provide for her reasonable needs and that she was unable to support herself through appropriate employment.

"Although a trial court's decision regarding maintenance is presumed correct, a judgment on maintenance will be disturbed on appeal where it is improper under the standard of *Murphy v. Carron*[.]" *In re Marriage of Eck*, 904 S.W.2d 60, 62 (Mo.App.1995) (internal citation omitted).

The determination of whether to award maintenance under section 452.335.1 is a two-step procedure. *Crews v. Crews*, 949 S.W.2d 659, 666 (Mo.App.1997) (quoting *Price v. Price*, 921 S.W.2d 668, 672 (Mo. App.1996)). In the first step, section 452.335.1 requires the trial court to find that: (1) the party seeking maintenance lacks sufficient property, including marital property apportioned to that spouse, to provide for his or her reasonable needs; and (2) the party seeking maintenance is unable to support herself through appropriate employment. *See Kirkwood v. Kirkwood*, 77 S.W.3d 675, 682 (Mo.App. 2002). Once these findings are made, section 452.335.2 requires that the trial court, in determining the amount and duration of

its maintenance award, consider the ten factors enumerated in the statute and "balance the reasonable needs of the spouse seeking maintenance with the other spouse's ability to pay." *Linton v. Linton,* 117 S.W.3d 198, 205 (Mo.App.2003) (quoting *Myers v. Myers,* 47 S.W.3d 403, 409 (Mo.App.2001)). Once both steps have been satisfied, the statute provides that maintenance should be awarded "in such amounts and for such periods of time as the court deems just." *See* § 452.335.

We decline to review Wife's third point concerning the trial court's award of maintenance until the trial court has revisited its division of property because in determining the amount of maintenance the trial court necessarily must consider the property division. *See Fletchall,* 896 S.W.2d at 524; *Coleberd v. Coleberd,* 933 S.W.2d 863, 870–71 (Mo.App.1996); *see also* §§ 452.335.1(1); 452.335.2(5).

The judgment of the trial court dissolving the marriage of the parties, effective November 7, 2002, is affirmed. The remainder of the judgment is reversed and remanded for further proceedings consistent with this opinion. The trial court is expressly authorized to take further evidence in the matter as the trial court may determine.

PARRISH, P.J., and BATES, C.J., concur.