# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1293

_____

Forklifts of St. Louis, Inc.,      *
                                       *

      Plaintiff - Appellee,      *

                                  *   Appeal from the United States

      v.                          *   District Court for the

                                  *   Eastern District of Missouri.

Komatsu Forklift, USA, Inc.,      *

                                  *

      Defendant - Appellant.      *

_____

Submitted:  December 16, 1998

Filed:  June 2, 1999

_____

Before BEAM, FLOYD R. GIBSON, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

This diversity case arose when a distributor relationship went sour.  The protagonists are Komatsu Forklift, U.S.A., Inc. ("Komatsu"), a Georgia manufacturer of Komatsu brand forklifts and parts, and Forklifts of St. Louis, Inc. ("FSI"), an established distributor of forklifts in the St. Louis area that agreed to add the Komatsu line.  The destructive catalyst was Komatsu's broken promise to eliminate its existing St. Louis distributor, John J. Connell Co. ("Connell").  This deprived FSI of profits it expected to reap from becoming the only Komatsu distributor located in the St. Louis area, so FSI terminated the relationship and commenced this action for breach of

promise. The significant legal issue on appeal is whether Missouri law provides a claim for negligent misrepresentation in these circumstances.

## I.

In late 1993, FSI was a successful distributor of Clark brand forklifts, enjoying a twenty percent retail market share in its St. Louis trade area. Clark agreed that FSI could represent other forklift manufacturers because Clark was having problems supplying its dealers with enough product. At the same time, Komatsu wanted a new dealer in the St. Louis area because its existing dealer, Connell, was performing poorly, having less than three percent of the St. Louis retail market. FSI and Komatsu discussed FSI becoming a Komatsu dealer. To spark FSI's interest, Komatsu represented it was in the process of terminating Connell as a Komatsu dealer.

On June 10, 1994, the parties signed a written Dealer Sales and Service Agreement (the "Agreement") granting FSI the non-exclusive right to distribute Komatsu forklifts. The Agreement gave FSI, but not Komatsu, the right to terminate at any time on thirty days notice. FSI purchased a substantial inventory of Komatsu equipment and began construction of a new facility, called Forklift City, for the promotion and sale of Komatsu forklifts. When Komatsu did not promptly terminate Connell, FSI demanded a written promise that it would become the sole Komatsu distributor in the St. Louis area. On July 26, 1994, Komatsu sent FSI a fax stating, "Komatsu is committed to [FSI] as the sole dealer in St. Louis." But in the following months, Komatsu did not terminate Connell. Indeed, an invigorated Connell became a serious thorn in FSI's side, aggressively undercutting FSI's prices for Komatsu products, satisfying a growing portion of the local demand for Komatsu forklifts that FSI had planned to capture, and targeting FSI's Clark forklift customers for conversion to Komatsu.

-2-

On May 2, 1996, FSI terminated the Agreement and commenced this action, alleging that Komatsu had fraudulently and negligently misrepresented that it was terminating Connell. Komatsu contended it honestly represented being in the process of terminating Connell, a process that failed when Connell resisted and Komatsu had no sufficient contractual cause to terminate unilaterally. After a lengthy trial, the jury rejected FSI's claims of intentional fraud and promissory estoppel but awarded $417,000 in damages on its claim of negligent misrepresentation. The district court[1] denied Komatsu's extensive post-trial motions. Komatsu now appeals, seeking judgment as a matter of law or a new trial. We affirm.

## II.

Komatsu argues that FSI's claim of negligent misrepresentation is inconsistent with, and therefore barred by, the written Agreement between the parties. The Agreement contained a broad integration clause:

> This Agreement reflects all the agreements . . . by and between the parties. Neither party shall be liable for any representation made unless it is expressly set forth in this Agreement . . . .

The Agreement assigned FSI an area of primary responsibility and stated that FSI's rights as a dealer were "nonexclusive." Komatsu contends that its pre-contractual promise to terminate Connell and make FSI the sole Komatsu dealer in St. Louis was inconsistent with these terms of the Agreement, and FSI may not obtain relief barred by the law of contracts through a claim in tort for negligent misrepresentation.

---

[1]The HONORABLE THOMAS C. MUMMERT, United States Magistrate Judge for the Eastern District of Missouri, who presided with the parties' consent pursuant to 28 U.S.C. § 636(c).

This is a difficult issue, and it appears to be unresolved under Missouri law. FSI appropriately cites Cabinet Distributors, Inc. v. Redmond, 965 S.W.2d 309, 314 (Mo. App. 1998), which broadly stated that the rule that a written contract does not bar claims of *fraudulent* inducement applies equally to claims that a contract was induced by one party's *negligent* misrepresentation. But the discussion in Cabinet Distributors was an alternative ground, the opinion did not deal satisfactorily with the complexities of the issue, and the court entirely ignored contrary authority from other jurisdictions across the country. Compare AKA Distrib. Co. v. Whirlpool Corp., 137 F.3d 1083, 1086-87 (8th Cir. 1998) (applying Minnesota law); Rio Grande Jewelers Supply, Inc. v. Data Gen. Corp., 689 P.2d 1269 (N.M. 1984); Keller v. A.O. Smith Harvestore Prods., Inc., 819 P.2d 69, 74-77 (Colo. 1991) (Rovira, C.J., dissenting), and the authorities cited in those cases, with Cabinet Distributors and the authorities on which it relied. Thus, we are not at all confident that if presented with the question the Supreme Court of Missouri would adopt the broad ruling in Cabinet Distributors.

However, even if FSI's claim of pre-contractual negligent misrepresentation is barred as inconsistent with the written Agreement, FSI also presented evidence that Komatsu's negligent misrepresentations continued after the contract was formed. In July 1994, Komatsu promised FSI it would be the sole Komatsu dealer located in the St. Louis area, and Komatsu thereafter reassured FSI that the termination of Connell was still in progress. In reliance on those representations, FSI (i) did not exercise its right to terminate the Agreement at any time, and (ii) invested heavily in its plan to market Komatsu forklifts from a new Forklift City facility. It is well-settled that post-contract-formation misrepresentations of this kind will support an action for fraud *or* for negligent misrepresentation. See Jim Lynch Cadillac, Inc. v. Nissan Motor Acceptance Corp., 896 S.W.2d 704, 707 (Mo. App. 1995); Eaton Corp. v. Easton Assoc., Inc., 728 F.2d 285, 291-94 (6th Cir. 1984). This distinction suggests we should examine the jury's verdict more closely.

-4-

In its negligent misrepresentation instruction, the district court charged that the jury must find FSI relied on Komatsu's misrepresentations "in deciding *to become or remain* a dealer of Komatsu products." In other words, the instruction encompassed misrepresentations made both before and after contract formation. The jury then returned a general verdict for FSI on this claim. In most cases, if an appellate court finds error in one theory of liability upon which a general verdict may have rested, the verdict cannot be upheld. See Sunkist v. Winckler & Smith Co., 370 U.S. 19, 29-30 (1962). Here, however, we find no indication in the record on appeal that Komatsu ever raised this issue in the district court. In response to Komatsu's pretrial motion to dismiss, the court ruled that neither the written contract nor the parol evidence rule barred FSI's claim of intentional fraud but did not discuss these issues regarding the claim of negligent misrepresentation. Turning to FSI's claim of promissory estoppel, the court expressly held that claim barred as to pre-contract-formation promises, but not as to post-contract-formation promises. The court's discussion strongly suggests that Komatsu was aware that the distinction between pre-contract-formation and post-contract-formation misrepresentations might be significant, but it did not note this possible issue in challenging the negligent misrepresentation claim. This inference is confirmed by the fact that Komatsu did not object to the above-quoted language in the court's proposed negligent misrepresentation instruction.[2] In these circumstances, we conclude that any objection to the general verdict as ambiguous was not preserved, and thus we need not decide whether the claim for pre-contract-formation negligent misrepresentation was inconsistent with Missouri law so long as the trial evidence

[2]Komatsu's decision not to argue this issue was well grounded in the evidence. It is undisputed Komatsu made the post-contract-formation representations, Connell was never terminated, and all the damages claimed by FSI arose from post-contract-formation losses. It is highly unlikely the jury would have found Komatsu's pre-contract-formation representation false but its post-contract-formation representation truthful. Thus, successfully excluding only FSI's claim for pre-contract-formation negligent misrepresentation would have been of no practical benefit to Komatsu.

supports a verdict in favor of FSI on its claim of post-contract-formation negligent misrepresentation. We turn to that evidentiary issue.

## III.

Komatsu argues the district court erred in denying its motion for judgment as a matter of law because there was insufficient evidence that it *falsely* represented it was in the process of terminating Connell. "Our review of a jury verdict is extremely deferential and we will not reverse for insufficient evidence unless after viewing the evidence in the light most favorable to the verdict, we conclude that no reasonable juror could have returned a verdict for the non-moving party." Morse v. Southern Union Co., No. 98-2050, 1999 WL 212844, at *2 (8th Cir. April 14, 1999) (internal quotations omitted). Here, there is substantial evidence from which a reasonable juror could find false post-contract-formation representations that Komatsu was in the process of terminating Connell. For example, two Komatsu managers who made such representations testified that Komatsu's president needed to approve any termination but no such approval was ever given. There was evidence Komatsu knew it needed a valid contractual reason to terminate Connell and received an opinion letter from counsel advising no valid reason existed, yet Komatsu continued to assure FSI Connell was being terminated. Finally, there was evidence Komatsu stood to benefit by not terminating Connell while stringing FSI along -- after FSI became a Komatsu dealer, its local market share rose from three percent through Connell alone to almost ten percent divided equally between Connell and FSI. Viewing the trial record in the light most favorable to the jury verdict, the evidence was more than sufficient to support the jury's finding that Komatsu's representations were negligently false.

## IV.

Komatsu next argues FSI failed to prove its damage claim with the reasonable certainty required by Missouri law. FSI presented substantial evidence that it relied on

Komatsu's post-contract-formation misrepresentations in not exercising its right to terminate the Agreement, and in making a substantial investment in its new Forklift City facility. Forklift City was the facility built to promote Komatsu products and from which FSI made most of its Komatsu sales. To estimate damages attributable to Komatsu's negligent misrepresentations, FSI's equated those damages with the estimated $617,000 it lost at the new Forklift City facility during the time in question. Komatsu argues this damage theory was fatally flawed because it failed to offset the alleged Forklift City losses with profits FSI undoubtedly made selling Komatsu products from FSI's other business locations. We disagree.

The offsetting profit data in question was not readily available because FSI's business records did not allocate its costs and revenues by manufacturer by facility. Komatsu vigorously cross examined FSI's damage witnesses about FSI's profits from sales of Komatsu products at other locations, and the jury's final verdict of $417,000 was $200,000 less than the damages FSI requested. Under Missouri law, FSI was only required to prove the existence and amount of damages with reasonable certainty. "A party attempting to prove damages need only place before the jury the relevant facts tending to show the extent of damages, enabling the jury to make an intelligent estimate of damages as circumstance of the case will admit." C.L. Maddox, Inc. v. Benham Group, Inc., 88 F.3d 592, 601 (8th Cir. 1996) (internal quotations omitted). We agree with the district court that FSI's damage theory and evidence satisfied this standard.

## V.

Finally, Komatsu argues it is entitled to a new trial because the district court refused to exclude the testimony of an accountant, James Castellano, who served as FSI's damage expert. As the Supreme Court recently emphasized, federal district courts must perform an important gatekeeping function by screening the reliability of all expert testimony, but they have substantial discretion in deciding how to test an

expert's reliability and whether the expert's relevant testimony is reliable. <u>See</u> <u>Kumho Tire Co. v. Carmichael</u>, 119 S. Ct. 1167, 1174-76 (1999).

In this case, Komatsu argues that Castellano's $617,000 damage estimate was unreliable because Castellano failed to take into account profits earned by FSI on Komatsu sales at other facilities, expressed a causation opinion without examining the issue of causation, and parroted FSI's damage theory without independently verifying the information he was given and undertaking expert analysis. These contentions were not reflected in specific objections to the direct testimony offered by Castellano at trial, and Komatsu does not tell us how these issues were otherwise properly preserved for appeal. Castellano's direct exam consisted of routine damage testimony by an accountant who relied, surely to no one's surprise, on the books and records and financial information FSI had provided. <u>Compare</u> <u>International Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.</u>, 851 F.2d 540, 545 (1st Cir. 1988). Castellano was then subjected to vigorous cross examination by Komatsu, and the jury ultimately reduced his damage estimate by one-third. For Komatsu to suggest that the district court abused its discretion by not excluding this testimony *sua sponte* borders on the absurd.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-