**Patricia A. WAGONER, Respondent,**

v.

**Benson C. WAGONER, Appellant.**

**No. WD 59945.**

Missouri Court of Appeals,
Western District.

May 31, 2002.

---

Allen S. Russell, Esq., Kansas City, for Appellant.

Cynthia R. Powers, Esq., Kansas City, for Respondent.

Before HARDWICK, P.J., ELLIS and HOLLIGER, JJ.

LISA WHITE HARDWICK, Judge.

Benson Wagoner (Husband) appeals the judgment dissolving his marriage to Patricia Wagoner (Wife). He claims there was insufficient evidence to support the finding that the marriage was irretrievably broken, and that the trial court erred in precluding cross-examination of wife regarding her valuation of certain marital assets. We affirm in part and reverse in part.

**Factual and Procedural History**

Husband and Wife were married on March 7, 1964. For most of the marriage, Husband worked for the Kansas City Police Department. After retiring in 1994, Husband's income derived almost exclusively from retirement funds and from his operation of a "mobile disco" at wedding receptions and similar social gatherings.

Wife worked during the marriage as a dental assistant for twenty-eight years. The dental office had a small staff and required her to work an average of fifty to fifty-five hours per week. She was still employed as a dental assistant at the time of the dissolution.

On August 24, 2000, Wife filed a dissolution petition alleging the marriage was irretrievably broken. She sought a division of the marital property and restoration of her maiden name. The parties' only child was emancipated at the time the dissolution was filed.

Husband filed an answer denying the marriage was irretrievably broken. He sought dismissal of the dissolution petition and a court order for marital counseling. Wife filed a reply, alleging Husband had behaved in such a way that she could no longer be expected to live with him.

After an evidentiary hearing, the trial court declared the marriage irretrievably broken and entered a judgment of dissolution. The court divided the marital estate

by awarding approximately 53.5% to Wife and 46.5% to Husband. Husband appeals.

## Standard of Review

■ This court must affirm a dissolution judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Crews v. Crews,* 949 S.W.2d 659, 663 (Mo.App. W.D. 1997). The burden of demonstrating error is on the party challenging the divorce decree. *Lewis v. Lewis,* 978 S.W.2d 64, 66 (Mo.App. W.D.1998). We will review the evidence and any reasonable inferences therefrom in the light most favorable to the trial court's judgment. *Thomas v. Thomas,* 989 S.W.2d 629, 633 (Mo.App. W.D.1999).

## Sufficiency of Evidence to Support the Dissolution

■ A trial court is authorized to dissolve a marriage upon a finding that it is irretrievably broken. § 452.320 [1]. If the respondent in a dissolution action denies the marriage is irretrievably broken, the court must hear evidence and determine whether the petitioner can satisfy one or more of the following facts to warrant dissolution of the marriage:

(a) That the respondent has committed adultery and the petitioner finds it intolerable to live with the respondent;

(b) That the respondent has behaved in such a way that the petitioner cannot reasonably be expected to live with the respondent;

(c) That the respondent has abandoned the petitioner for a continuous period of at least six months preceding the presentation of the petition;

(d) That the parties to the marriage have lived separate and apart by mutual consent for a continuous period of twelve months immediately preceding the filing of the petition;

(e) That the parties to the marriage have lived separate and apart for a continuous period of at least twenty-four months preceding the filing of the petition. . . .

Section 452.320.2(1)

In the instant case, the trial court heard evidence on Wife's allegation, pursuant to § 452.320.2(1)(b), that Husband behaved in such a way that she could not reasonably be expected to live with him. Wife testified that she had a good relationship with Husband in the early years, but it deteriorated over thirty-seven years of marriage. Husband eventually chose not to participate in couples' retreats and activities when asked, stopped attending church with Wife, and refused to attend marriage counseling with her because he didn't feel it was necessary. The parties maintained separate finances, and Wife did most of the household chores and repairs.

Wife's mother had been in bad health since the early 1990's. Starting in October 1999, Wife and her sister would alternate evenings at their mother's home to care for her. This required Wife to leave her job at the end of the business day and go directly to her mother's home. Husband seldom accompanied Wife on these evenings.

Finally, on Thanksgiving Day 1999, Husband sent Wife an e-mail "ultimatum" stating, "I want a woman home 24 hours a day to love, not one that comes home every other day. Find another way or else." When Wife told Husband she needed his

---

**1.** All statutory references are to Revised Statutes of Missouri (2000) unless otherwise noted.

support because working and caring for her mother was difficult, he suggested she sell her North Carolina property and use the proceeds to hire someone to care for her mother.

Wife testified that even when she was home, Husband normally stayed downstairs in the family room watching television or playing records. During the whole month of July 2000, when she was home during vacation from work, Husband spoke to her only once. On cross-examination, Wife said the amount of time she spent caring for her mother brought an already bad relationship "to a head," but it was not the reason she and Husband did not do things together. She said they were sexually active prior to Thanksgiving 1999, but Husband had not attempted intimacy with her since then.

Husband testified that he had a good relationship with Wife prior to 1999. He showed an active interest in her activities by arranging for the purchase of a recreation club membership and numerous yearly vacations to North Carolina. He set up an account at the police credit union to benefit Wife in case of emergency; and he had made several efforts to involve Wife in marriage counseling since the filing of the dissolution petition. Husband blamed Wife's work schedule and her time away caring for her mother as the reason for their lack of intimacy, lack of communication, and diminished relationship.

When questioned about his response to Wife's request for more support and additional help in November 1999, Husband acknowledged his suggestion that Wife sell her North Carolina property (gifted to Wife by her grandmother) and use the money to get professional help for her mother. He acknowledged communicating with Wife primarily by e-mail. He admitted he probably had not spoken to Wife for the whole month of July 2000, despite the fact she was working full time, caring for her mother, and had health problems of her own.

Based on this evidence, the trial court concluded the marriage was irretrievably broken and made the following factual findings:

The testimony of both Petitioner and Respondent supports Petitioner's allegation that Respondent has behaved in such a way that Petitioner cannot be reasonably expected to live with Respondent; and the Court notes that there had been a significant, and long standing, lack of communication and absence of commonality of interests between the parties.

Husband challenges these findings as unsupported by the evidence. As the trial court noted, however, there was clear testimony from both parties that Husband refused to communicate directly with Wife and that Husband's intentional isolation was largely due to his anger over Wife caring for her ailing mother. Husband demanded that Wife give up personally caring for her mother "or else." Such "dictatorial and repressive" conduct has been found sufficient to support a finding that the marriage is irretrievably broken. *In re Marriage of Haugh*, 978 S.W.2d 80, 84 (Mo.App. S.D.1998).

■ Although there may be a difference of opinion as to whether Husband's conduct was egregious enough that Wife could not be expected to live with it, we must defer to the trial court's assessment of the factual evidence in this regard. *Cregan v. Clark*, 658 S.W.2d 924, 927–28 (Mo.App. W.D.1983). Point I is denied, as the record is sufficient to support the judgment of dissolution.

### Division of Marital Property

■ Husband contends the trial court erred in refusing to allow cross-examina-

tion of Wife regarding her method of valuing certain marital assets. Based on this error, Husband asserts the court's property division was not based on substantial and competent evidence of the fair market value of the marital assets.

On direct examination concerning the value of the personal property items at issue,[2] Wife testified the assigned values were her "best guesstimates." On cross-examination, Husband's counsel questioned the process used to determine those values. Wife responded that she figured the "replacement value" on some assets and used a different method of valuation on others. Husband's counsel asked Wife to identify the assets for which she designated the replacement value, but Wife's counsel objected. The record reflects the following colloquy:

> HUSBAND'S COUNSEL: Which ones did you use replacement valuing on?
>
> WIFE'S COUNSEL: I object, Your Honor. The witness is capable of testifying to the value of the property just as [Husband] is.
>
> HUSBAND'S COUNSEL: The court, as the court is aware, has to take the replacement value is not the correct standard that the court has used in determining what is the fair market value.... If the witness is applying different standards, replacement value on certain items versus a different value on other items, the court's entitled to know for clarification purposes how she valued each item.
>
> COURT: Well, I don't think an owner has to have any standard at all, do they?
>
> HUSBAND'S COUNSEL: I believe the court is bound to determine the fair market value when they're talking

about certain properties would be essentially garage sale prices.

> COURT: I am, but she's not.
>
> HUSBAND'S COUNSEL: No, but for the court's clarification the court has to determine how the property is to be divided and correct me if I'm wrong, but the court would want to know whether the numbers here represent a fair market value.
>
> COURT: She's told you what she thinks they're worth. That's all I really care about. Your client has the same opportunity. I think I am perfectly capable of making a determination of items of personal property.

The trial court denied Husband's counsel any opportunity to question Wife as to how she valued any of the specific personal property items on her proposed list for division of marital property. Husband submitted his own proposed list which collectively valued the same property items at approximately $10,000 less than Wife's valuation.

In the judgment, the trial court adopted Wife's valuations on all of the personal property items at issue. The court had previously noted, in its discussion with counsel referenced above, that it was obligated to consider the fair market value of the marital assets in order to make a fair and equitable division of the property. By adopting Wife's valuations of the personal property in its judgment, the court impliedly found those values to be the fair market values of the marital assets at issue. Husband asserts this determination was not supported by the evidence. He further claims the court "prejudge[d]" Wife's credibility by not allowing Husband to challenge the methods and standards by which Wife calculated her property values.

---

2. The personal property items include all of the parties' household goods, antiques, and equipment related to Husband's mobile disco business.

■ The division of marital property is a matter within the sound discretion of the trial court. *Taylor v. Taylor*, 25 S.W.3d 634, 639 (Mo.App. W.D.2000). While the court is not required to assign a value to each piece of property subject to division, the court must have before it proper evidence of value. *In re Marriage of Sumner*, 777 S.W.2d 267, 272 (Mo.App. S.D.1989). Evidence permitting a fair and accurate valuation of the assets is required before a just division of the property can be achieved, and a meaningful review of that division can be undertaken on appeal. *Spauldin v. Spauldin*, 945 S.W.2d 665, 669 (Mo.App. W.D.1997).

■ While property owners are generally qualified to offer an opinion as to the fair market value of their property, Wife admitted she used "replacement value" in assessing some of the items. *Farley v. Farley*, 51 S.W.3d 159, 164–65 (Mo. App. S.D.2001). Husband was precluded from questioning whether Wife used a fair market valuation on any of the personal properties at issue. The court thereafter adopted Wife's valuations on all of the items. On this record, there is insufficient evidence to support the trial court's division of property based on a fair market valuation. When the trial court does not have sufficient evidence of property value, the property award must be reversed and remanded for the court to hear additional evidence concerning the property. *Finnical v. Finnical*, 992 S.W.2d 337, 344 (Mo. App. W.D.1999). Proper valuation is essential to achieving a just division of property. *See Brock v. Brock*, 936 S.W.2d 882, 885 (Mo.App. E.D.1997)

We reverse and remand the entire portion of the trial court's judgment regarding the property division. On remand, the court is directed to accept additional, clarifying evidence regarding the value of the personal property itemized in Petitioner's Exhibits 3 and 4. The court shall then determine a fair and equitable division of the marital property. All other aspects of the Judgment and Decree of Dissolution of Marriage are affirmed. Respondent's Motion to Dismiss Frivolous Appeal and Request for Damages is denied.

ELLIS, J. concurs.

HOLLIGER, J. concurs in attached concurring opinion.

HOLLIGER, Judge, concurring.

I concur in the result and reasoning of the opinion of Judge Hardwick. I write separately to emphasize that a confluence of errors, misjudgments and the standards of review that this court must follow has led to a result that is likely needlessly costly to the parties and the trial court and unlikely to result in any material change in the ultimate disposition.

In his sole point on appeal regarding the property division, the appellant complains only that there was insufficient evidence to support the valuation by the trial court of certain household goods that were distributed between the parties. If the issue before us was whether the trial court abused its discretion in dividing the property as it did or that the overall division of marital property was unduly weighted to respondent, I feel confident that we would affirm the trial court's judgment.

The trial court did not indicate expressly that it was attempting to achieve a particular percentage division of the property. By gratuitously assigning values (by incorporating the wife's values) without any request by the parties' for findings of fact, the trial court did, in effect, express a mathematically calculable division. As a result it appears that the wife received (before consideration of debt) approximately $24,156 of personal property of all

types[1] while appellant received some $47,873 (including the household goods, whose value is at issue). And though it is true that appellant was ordered to pay most of the debt, there was also evidence that much, if not all, of that debt was incurred solely by the husband for his personal purposes either for his small business or to acquire personal property he was being awarded. Nor does appellant complain on appeal about the orders regarding debt. Additionally, although the trial court volunteered findings about many items of property, it did not value other items and particularly appellant's small business.

There is nothing inherently shocking about the property division. Moreover, appellant does not complain about the actual division of the household goods and never suggests that, no matter whether properly valued or not, the court should have set a particular household item over to the other party.

So how do we get to this unfortunate situation? Because of the nature of the point on appeal, we are legally confined to an examination of whether there is evidence of the values that the court assigned. I agree with Judge Hardwick that there is no such evidence. This unfortunately results from respondent's counsel making a baseless objection to appellant's attempt to cross-examine respondent as to how she valued the household goods and the trial judge *unfortunately* buying into that objection. The trial court cannot pull figures out of the air to value personal property but must have evidence, as I am confident the trial court knew. But, unfortunately (and I suspect without realization), the trial court said it did not need such evidence from respondent and it was therefore unnecessary for appellant to cross-examine her on that issue. Even this error would have been harmless if the trial court had not utilized respondent's very own values in the dissolution decree.

Thus, we reach the appeal and the miscalculations continue. Respondent, whose baseless objection led the trial court to improperly limit cross-examination and to determine values not supported therefore by the evidence, chose not to file a brief on appeal. We are thus uncomfortably left with only the appellant's view of what happened below. Nor is appellant blameless in this matter. Appellant found a technical (but inexcusable error) and exploited it. He is correct. There is no evidence to support some of the findings in the judgment. But to what ultimate effect is this error?

Although not absolutely clear, it is very possible that the trial court may make no substantial revision in the property division on remand after taking additional evidence of value of household goods. Much of the other personal property divided by the parties seems to have been so divided either because the parties agreed or it was just natural or accompanied the debt on that property.

Counsel on appeal have some obligation to select as issues those that are important, financially or otherwise, to their client and worth both the client's and the court's expenditures of time and money. Counsel should always consider and discuss with their client whether the issue is "worth it." I do not suggest, and would not, that appellate courts become involved in this type of assessment. We must trust and encourage counsel to so perform their duty.

---

1. Essentially the equity of the marital home was divided equally although it was awarded to appellant.

Here it appears that the total marital estate (not including real estate of $75,000) does not exceed $73,000 (and only $48,000 after consideration of debt), and the household goods, even given appellant's values, are worth no more than ten to fifteen thousand dollars. An examination of the list of household goods reveals that no item is worth more than $800[2] and that was when this case was tried the first time. Most items are valued from $5.00 for a recipe box to several hundred dollars for items of furniture. Now the parties have incurred the costs of not only one trial but also an appeal and partial re-trial and potentially another appeal. None of this should have been necessary.

---

2. Except a jukebox purchased by appellant for $7000 for his business and valued by respondent at $4000.