MISSOURI BOARD OF NURSING
HOME ADMINISTRATORS,
Appellant,

v.

Carol STEPHENS, Respondent.

No. WD 60927.

Missouri Court of Appeals,
Western District.

April 29, 2003.

Laura Krasser, Jefferson City, MO, for appellant.

Matthew D. Turner, Jefferson City, MO, for respondent.

Before ULRICH, P.J., LOWENSTEIN and HOLLIGER, JJ.

HAROLD L. LOWENSTEIN, Judge.

The Missouri Board of Nursing Home Administrators (Board) appeals from the administrative hearing commission's ("AHC's") judgment that there was no cause to discipline the respondent, licensee Carol Stephens. The Board filed a complaint against Stephens for negligence and violations of regulations in response to alleged molestation of a patient in 1997 at the Neosho Senior Center, where Stephens was the administrator. In its sole point on appeal, the Board claims that the AHC's decision to bar the Board's expert from testimony as a penalty for Board's discovery abuse was error.

## I. Facts

There is no assertion by the appellant Board as to the sufficiency of the evidence to support the AHC's decision. A recitation of the facts is necessary to explain the issue here as to the sanction by the AHC for the discovery violation relief granted. On Saturday, September 13, 1997, an employee of the Neosho Senior Center, a skilled nursing facility, entered a female resident's room around lunchtime and saw a man standing by the Resident's bed. The resident was naked below the waist. The man held a brief designed for an incontinent person. The woman is cognitively impaired, incontinent, and unable to move her legs. Asked what he was doing, the man a visitor of another resident did not respond and left the room and the Center. The employee reported this encounter to Stephens by telephone. Stephens ordered an investigation but did not visit the Center the day of the encounter, did not review the resident's chart until three months later, did not have the resident moved to another room, did not notify the Division of Aging or the resident's legal guardian of the encounter, and did not instruct the staff that the man should be barred from the Center or from the resident's room.

Three hours after the first incident, the employee returned to the resident's room. Again, the man was standing next to the resident's bed, holding up the sheets. Though clothed in a hospital gown, the resident was wearing no undergarments. The employee left the room to get help from the charge nurse. Informed of the man's return, the charge nurse accompanied the employee to the resident's room. The man had placed his hand on the resident's thigh. The charge nurse pulled the covers down and asked the visitor what he was doing. He said he was readjusting the resident's legs. The charge nurse told him that was not his job. The visitor accused the charge nurse and the other employees of not doing their job, cursed at her, and again left the Center. The two

employees wrote reports of the incident, which they left under the door of Stephens' office.

Two days later, Stephens called the man, who admitted changing the incontinent resident's brief and touching her legs. After the call, Stephens met with a senior administrator and staff. She did not notify the resident's legal guardian or the Division of Aging of either of the incidents. Stephens told staff to closely monitor the man and to prevent him from going down the resident's hallway; and to document any relevant events and to notify management when the visitor came into the building. Later examination of the resident's chart showed no physical injury. Stephens called the man. He told her he would never offer similar "help" to residents. He told her, and she believed him, that he had been friends with the resident and her husband and was just helping.

After receiving complaints about the incidents at the Center, the Division of Aging started an investigation, at the conclusion of which the Board filed a complaint against Stephens with the AHC. It charged Stephens with failing to comply with Board regulations, failing to report the abuse or neglect of a resident, and being grossly incompetent, all in violation of section 344.050(2) RSMo 2000.[1]

On November 8, 1999, Stephens served the Board with a request that the Board provide "any and all statements from potential witnesses in this matter" and "any and all reports/memoranda or other documents concerning information provided by potential witnesses in this matter." The Board did not reveal the identity of Dan Rexroth. Following several continuances, the hearing was again set for August 30, 2000. On July 21, 2000, Stephens asked the Board to "identify all experts you expect to call as witnesses." On August 21, 2000, the Board responded to the second request. Two days later, Stephens learned that Dan Rexroth was an expert the Board was likely to have testify.

On August 24, 2000, Stephens moved to exclude Rexroth's testimony or to grant a continuance because of the Board's discovery abuse. Stephens claimed that the Board violated Rule 56.01(e)(1) by not revealing the identity of Rexroth in response to her first discovery request. Nowhere in her motion did Stephens allege exactly when the Board retained Rexroth. Nor did Stephens argue that the Board's response to her second request was unreasonable or that expert testimony was unnecessary.

On August 25, 2000, the AHC granted Stephens' motion to exclude the testimony of Rexroth. Citing *Hurlock v. Park Lane Medical Center*, 709 S.W.2d 872, 878 (Mo. App.1985), and *W.E.F. v. C.J.F.*, 793 S.W.2d 446, 448 (Mo.App.1990), the AHC found that the Board's failure to volunteer

---

1. "The board may cause a complaint to be filed with the administrative hearing commission as provided by chapter 621, RSMo, against any holder of any certificate of registration or authority, permit or license required by this chapter or any person who has failed to renew or has surrendered his certificate of ... registration or authority, permit or license for any one or any combination of the following causes:

(5) Incompetency, misconduct, gross negligence, fraud, misrepresentation or dishonesty in the performance of the functions or duties of any profession licensed or regulated by this chapter;

(6) Violation of, or assisting or enabling any person to violate, any provision of this chapter, or of any lawful rule or regulation adopted pursuant to this chapter;

* * *

(13) Knowingly failing to report abuse or neglect of a resident in a long-term care facility, as required by section 198.070, RSMo, of which he has actual knowledge that it is abuse or neglect."

Rexroth's identity until nine days before the hearing was an "unfair surprise," unduly prejudicial to Stephens. This prejudice, according to the AHC, warranted exclusion of Rexroth's testimony. The AHC also concluded that expert testimony was unnecessary, saying "[t]his is not a case of such technical sophistication that expert testimony is required." The order went on to hold that even though expert testimony was not required, the Rexroth testimony could enhance the Board's case to the detriment of Stephens.

The Board moved for reconsideration, arguing that (1) it had promptly complied with Stephens' second request, and (2) it had made Rexroth available to Stephens for deposition since mailing its response to the second request, but that Stephens had made no attempt to depose Rexroth. Denying the motion, the AHC stated, "In fairness to the Board, we also ordered that we will not hear the testimony of any expert Stephens retains." The AHC reiterated "technical expertise" would not be necessary to assist it in reaching a decision, but if at the close of evidence it was concluded that such evidence was necessary to reach a decision, it would, "leave the record open to receive such testimony from both sides."

The hearing began on August 30, 2000. · Rexroth's qualifications and proposed testimony were presented in an offer of proof. In summary, he said an administrator was responsible for: (1) the oversight and protection of the residents who lack decisional capacity; (2) for keeping the residents free from physical and mental abuse; (3) for notifying appropriate government agencies and families of any abuse; and (4) for making efforts to see that future abuses did not occur. He said Stephens' actions and non-actions here, including making sufficient investigation of the incidents, did not measure up to the standard of care.

At the end of the hearing, the AHC found that Stephens did not knowingly fail to report an abuse of the resident because the Board did not carry its burden of proving that she knew abuse had happened; that Stephens formulated a plan for dealing with the alleged batterer's return; that Stephens failure to notify the resident's guardian, while an oversight, and her failure to ban the alleged batterer from the facility, was not gross negligence, given her instructions to the staff. The AHC, therefore, declined to discipline Stephens' license under Section 344.050.2(5), (6), or (13). The circuit court affirmed the AHC's decision.

## II. Analysis

In a contested case, the AHC's decision, not the trial court's, is reviewed. § 536.100. Under Section 344.050.2, a nursing home administrator's license can, as applicable here, be disciplined for:

(5) Incompetency, misconduct, gross negligence, fraud, misrepresentation or dishonesty in the performance of the functions or duties of any profession licensed or regulated by this chapter;

(6) Violation of, or assisting or enabling any person to violate, any provision of this chapter, or of any lawful rule or regulation adopted pursuant to this chapter;

\* \* \*

(13) Knowingly failing to report abuse or neglect of a resident in a long-term care facility, as required by section 198.070, RSMo, of which he has actual knowledge that it is abuse or neglect.

Review of the only issue raised here, the AHC's decision to exclude expert testimony as a sanction for discovery abuse, is normally reviewed for abuse of

discretion, § 536.140.2(7), since exclusion is a discretionary matter, *Johnson v. State,* 58 S.W.3d 496, 499 (Mo. banc 2001); however, where the decision is based *solely* on a conclusion of law e.g., that there was discovery abuse because of the bare presence of prejudice review is *de novo.* See *Hundley v. Wenzel,* 59 S.W.3d 1, 4 (Mo. App.2001).

The discovery rules governing this case are the rules of civil procedure promulgated by the Supreme Court. § 536.073(2) & 1 CSR 15–2.420(1) (2001). The AHC may sanction discovery abuse. § 536.075. "Discovery abuse" includes misuse of the discovery process (e.g., overbroad request for information) or, as alleged here, "[t]he failure to respond adequately or promptly to proper discovery requests." Black's Law Dictionary 478 (7th ed.1999).

■ The AHC's initial conclusion that the prejudice from the admission of Rexroth's testimony warranted the exclusion of his testimony may have been in error because there was no discovery abuse, making any prejudice irrelevant. Rule 56.01(e)(1) provides that:

A party is under a duty seasonably to supplement the response with respect to any question *directly* addressed to ... the identity of each person expected to be called as an expert witness at trial and the general nature of the subject matter on which the expert is expected to testify. (emphasis added)

The duty to supplement in Rule 56.01(e)(1) only applies if there a direct request for the identities of likely expert witnesses. Stephens' first request did not directly ask for the identities of expert witnesses; the second request did. While the Board's dilatory response to the second request made one month after the request was arguably unseasonable (not "within a reasonable time," Black's Law Dictionary 1353 (7th ed.1999)), Stephens did not argue

for exclusion on that basis. This court can affirm on any alternative theory supported by the evidence but only if (assuming the theory could not be considered *sua sponte* by the court) the theory is before the trial court. *21 West, Inc. v. Meadowgreen Trails, Inc.,* 913 S.W.2d 858, 882 (Mo.App. 1995).

■ Exclusion on the grounds of prejudice alone was error. Nevertheless, error alone is insufficient to allow this court to reverse the trial court. First, "[p]rejudicial or reversible error in the admission or rejection of evidence is not an issue on appeal in any case tried before the judge without a jury." *City of Town & Country v. St. Louis County,* 657 S.W.2d 598, 608 (Mo. banc 1983). The question is whether the Rexroth opinion testimony should have been admitted and considered, and, if so, whether there was substantial evidence for the trial court's decision absent the admitted or excluded evidence. *Id.* This principle is equally applicable to cases before the AHC. Because the Board has not challenged the sufficiency of the evidence to support the AHC's decision, its argument here is unavailing. As already mentioned, the Board has not argued the AHC misconstrued or misapplied the law here, or specifically that the Rexroth evidence was necessary to clarify Stephens' standard of care.

■ Second, the exclusion of Rexroth's expert testimony was at most harmless error. Where the exclusion of evidence is harmless, the judgment must be affirmed. *See* Rule 84.13(b) ("No appellate court shall reverse *any judgment* unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action.") (emphasis added). *See also Coats v. Hickman,* 11 S.W.3d 798, 807 (Mo.App.1999). The admissibility of evidence is within the trial

court's discretion and will result in a reversal only if there is a substantial injustice. *State ex rel. Mo. Highway & Transp. Comm'n v. Buys,* 909 S.W.2d 735, 738 (Mo. App.1995). The erroneous exclusion of expert testimony is only reversible error when its inclusion would have changed the outcome of the case. *Legg v. Certain Underwriters at Lloyd's of London,* 18 S.W.3d 379, 386 (Mo.App.1999). The admission of Rexroth's testimony would not have changed the outcome of the case. In this case, there was, as the AHC acknowledged, little need for expert testimony that a nursing home administrator had a duty to prevent offensive touching of nursing home residents. Nor was it essential to have expert testimony that moving a resident who arguably has been a victim of molestation to another room or that excluding a purported batterer from the nursing home is a low-cost way to protect the residents. A layman understands that delay in investigating abuse allegations might have risen to the level of negligence, even gross negligence. *See Seippel–Cress v. Lackamp,* 23 S.W.3d 660, 668 (Mo.App. 2000) ("[T]here [is][no] peculiar need for expert testimony on any issue the resolution of which would not extend the jury beyond the range of ordinary lay knowledge and experience.") (quoting *Robbins v. Jewish Hosp. of St. Louis,* 663 S.W.2d 341, 346 (Mo.App.1983)) (quotation marks omitted).

A third reason for affirming the AHC's judgment is that a trial court may *sua sponte* exclude expert testimony when the testimony will not assist the trier of fact. *State v. Dixon,* 70 S.W.3d 540, 548–49 (Mo.App.2002) (presupposing that trial court has the power to exclude testimony on its own motion). *See also Forklifts of St. Louis, Inc. v. Komatsu Forklift, USA, Inc.,* 178 F.3d 1030, 1035 (8th Cir.1999) (same); 75 AM. JUR.2d *Trial* § 410 (2002)

(*citing Anderson v. Asphalt Distrib. Co.,* 55 S.W.2d 688 (Mo.1932) for the proposition). The exclusion of evidence on this ground is reviewed for abuse of discretion. *Wellman v. Wehmeyer,* 965 S.W.2d 348, 351 (Mo.App.1998). As the Board does not explain *how* Rexroth's testimony would have assisted the AHC, this court cannot conclude that the AHC abused its discretion in excluding the evidence.

Because the Board has not shown how the admission of Rexroth's expert testimony would have changed the outcome of the case, because the AHC could reasonably conclude that expert testimony was unnecessary, and because the Board did not argue that the judgment was against the weight of the evidence, the judgment is affirmed.

All concur.