Stephanie Reeves SHELBY,
Respondent,

v.

Jeffrey Joseph SHELBY, Appellant.

No. 24910.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 19, 2004.

Motion for Rehearing or Transfer to
Supreme Court Denied March 12, 2004.

Application for Transfer Denied
April 27, 2004.

Francis J. Murphy, III, K. Aileen Simpson, Cordell & Cordell, P.C., St. Louis, for appellant.

King E. Sidwell, Blanton, Rice, Sidwell, Nickell & Cozean, L.L.C., Sikeston, for respondent.

JOHN E. PARRISH, Judge.

Jeffrey Joseph Shelby (husband) appeals child custody, child support, and distribution of marital property provisions of a dissolution of marriage judgment.[1] This court affirms.

---

1. Wife filed a motion to dismiss this appeal asserting that the "judgment" the trial court entered prior to the time husband filed his notice of appeal did not dispose of all issues

The trial court dissolved the marriage of Stephanie Reeves Shelby (wife) and husband, awarded the parties joint legal custody of their two children (boys born August 17, 1995, and March 28, 1997), granted wife primary physical custody of the children, distributed marital property and debts, set aside non-marital property, and ordered husband to pay child support in the amount of $1,500 per month. Husband was awarded visitation at specified times including designated holidays and "special days."

This case was tried before the trial court without a jury and is, therefore, reviewed as provided by Rule 84.13(d). The judgment will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Hall v. Hall*, 53 S.W.3d 214, 217 (Mo.App.2001). The evidence and all inferences drawn therefrom are viewed in the light most favorable to the judgment. *Id.* Deference is granted to the trial court's determinations regarding the credibility of witnesses. *Id.*

Husband's first point on appeal asserts the trial court erred in excluding testimony of his psychiatrist, Dr. Browne–Barnum, as a rebuttal witness. Husband argues this was error because records belonging to that witness were relied on to refute testimony of another witness; that husband should have been permitted to present testimony of Dr. Browne–Barnum relative to those records.

Point I is directed to the trial court's child custody determination. Husband called Dr. David Clark, a psychologist, as a witness. Husband had retained Dr. Clark to conduct a parental evaluation of husband and the children. The day before trial began, husband disclosed Dr. Clark's notes that indicated he had relied, in part, on a psychological assessment Dr. Browne–Barnum made of father. Dr. Browne–Barnum had not been designated as an expert witness to be called at trial. Wife subpoenaed, obtained, and used Dr. Browne–Barnum's records for use in cross-examining Dr. Clark.

Dr. Clark stated that tests he performed did not indicate husband was bipolar and that he did not believe husband was bipolar; that although Dr. Browne–Barnum had previously diagnosed husband as bipolar, Dr. Clark disagreed with that diagnosis. On cross-examination, Dr. Clark stated that if husband were, in-fact, bipolar and did not take medication, such condition could interfere with husband's parenting. Dr. Clark again confirmed his disagreement with the earlier bipolar diagnosis.

Husband called another witness after Dr. Clark testified. He then sought to call Dr. Browne–Barnum "somewhat as a rebuttal" to the cross-examination of Dr. Clark. Husband's counsel told the trial court he originally had no intention of calling Dr. Browne–Barnum as a witness; that she had, therefore, not been disclosed prior to trial. Husband argued that because wife had used Dr. Browne–Barnum's records, husband desired the opportunity to call her to properly defend against the inferences drawn from those records. Wife objected to Dr. Browne–Barnum being permitted to testify. The trial court sustained the objection.

in the case and was, therefore, not a final judgment. Subsequent to that motion, the trial court disposed of all issues and entered final judgment by means of two separate documents. Wife correctly asserts that the notice of appeal was premature; however, a notice of appeal filed prematurely because it is from a "non-final, and, thus, nonappealable, judgment" is considered as filed immediately after the time a final judgment is entered. *Reynolds v. Reynolds*, 109 S.W.3d 258, 269 (Mo. App.2003). *See* Rule 81.05(b). The motion to dismiss the appeal was taken with the case. That motion is denied.

Husband made an offer of proof in which Dr. Browne–Barnum testified as to her treatment and diagnosis of husband. She testified by way of offer of proof that she began treating husband in December 1999; that she initially diagnosed husband with "bipolar II disorder, depressed, severe without psychotic features, and possible attention deficit hyperactive disorder of adulthood." By September 2000 her diagnosis changed. Husband was no longer diagnosed as bipolar. Husband had not been prescribed medication for bipolar disorder after September 2000. Dr. Browne–Barnum gave the further opinion that even if husband had bipolar disorder, he would still be able to be a good parent based on his functional abilities. Wife objected to the offer of proof. The trial court sustained the objection and denied the offer of proof. Husband argues the trial court erred in denying him the right to present Dr. Browne–Barnum as a witness; that the denial of his request to present her testimony was an abuse of discretion.

Husband argues that language used in a trial court document dated December 14, 2001, that was denominated a "judgment" reveals the trial court's reliance on the preliminary diagnosis included in Dr. Browne–Barnum's notes. Language included in the "judgment" referred to the "prior history and mental condition" of husband. The December 14, 2001, "judgment" was replaced by an "Amended Partial Findings of Fact and Conclusions of Law[,] Judgment and Decree of Dissolution of Marriage" filed April 10, 2002, that, together with a "Second Amended Findings of Fact and Conclusions of Law, Judgment and Decree of Dissolution of Marriage" filed October 23, 2002, make up the final judgment that is appealed. *See* n. 1, *supra*. The amended document that is part of the judgment before this court does not reference a mental condition of husband. The trial court states in its amend-ed document that "based on the prior history of [husband], [it] doubts the ability of [husband] to properly care for the children as the full time primary custodian."

■ Assuming, *arguendo*, that the trial court erred in denying father's request to present the testimony of Dr. Browne–Barnum, in order for father to prevail on Point I, the error would have to be reversible error. Exclusion of expert testimony is reversible error only when its inclusion would have changed the outcome of the case. *Missouri Bd. of Nursing Home Administrators v. Stephens*, 106 S.W.3d 524, 529 (Mo.App.2003); *See* Rule 84.13(b). There was evidence that husband had been diagnosed with, and was on medication at the time of trial for, depression, anxiety, and attention deficit hyperactivity disorder. This, together with other factors applicable to Point IV discussed *infra*, were what the trial court relied on in awarding custody. The denial of husband's request to present testimony of Dr. Browne–Barnum did not prejudice husband. If erroneous, it was harmless error. Point I is denied.

■ Point IV also relates to husband's complaint of trial court error in awarding child custody. Husband contends the trial court erred in awarding primary physical custody of the parties' two children to wife and "ordering her to reside within a 40 mile radius of [husband's] home." He argues this was not in the children's best interests and was not supported by the evidence because "[wife] removed the children from their home and family without notifying [husband], [wife's] conduct and affairs during the marriage were shown to have a potential adverse effect on the minor children and [wife] residing within 40 miles of [husband's] home hampers [husband's] visitation with the children."

The evidence before the trial court indicated that neither party prioritized parenting during the marriage. The parties abused alcohol and drugs and were frequently away from the children while "partying." As between the parties, however, wife·provided the majority of care for the children. Husband's lifestyle during the marriage was dominated by hunting activities. He was frequently away from home either hunting or at "deer camp." During those times wife took care of the children, got them out of bed, bathed, clothed, and cooked for them. Testimony at trial was that husband played with the children but did not·provide care for them. Husband became more active in caring for the children after the separation. The trial court found:

> The children need to maintain the stability and continuity of an ongoing arrangement for custody. The children have a close personal attachment to their mother. The court, based on. the prior history of [husband], doubts the ability of [husband] to properly care for the children as the full time primary custodian. He lacks the parenting skills and abilities of the natural mother, [wife]. The best interest and general welfare of the minor children would best be served by awarding the primary physical custody of the minor children to [wife].

R.J.A. v. G.M.A., 969 S.W.2d 241 (Mo. App.1998), explains:

> Upon review, this court presumes that a trial court awards custody with the child's best interests as its ultimate concern. [In re Marriage of Berger, 950 S.W.2d 307 (Mo.App.1997)] at 310[4]. This presumption arises because of the trial court's superior position to judge the credibility of witnesses and their character, sincerity, and other intangibles that might not be completely shown in the cold record. Id. A trial court is free to believe or disbelieve all, part, or none of any witness' testimony. Id. at 310[5]. Moreover, an appellate court will accord a trial court's decision in custody matters greater deference than in other cases. Id. at 310[6].

Id. at 244.

Initially, following their separation, wife and husband alternated living in the marital home with the children. Husband harassed mother and destroyed her property. Husband had a police officer present for the exchange of custody, which frightened the children. Husband tapped the telephone lines, destroyed wife's clothes and photographs, and committed other acts of harassment.

Wife subsequently moved the two children from the marital home. She relocated to Springfield, Missouri. Wife claimed the move was made out of fear of husband and was in the children's best interests. She told the trial court:

> I could not live under those conditions; nor my children. I'm looking out for the interest of the children. And I didn't want—do not want my kids to be scared of policemen. Nor when I was— when [husband] was away, they didn't know where daddy was. When I was away, they didn't know where mommy was. They saw the policeman leaving with me. They told me they thought I was in jail.
>
> So therefore, I moved to—well, actually I went to visit my sister. And when I got there, I realized their—their attitudes, everything changed for the children. And mine. We were happy.

Wife allowed husband frequent visitation, "close to 50 percent of the month," and telephone contact. There was evidence that husband would not allow the children to call or talk to wife during times they spent with him.

The trial court made the following finding regarding wife's move to Springfield:

During the pendency of this suit, [wife] moved with the minor children from their lifelong county of residence, Mississippi County[,] to Springfield, Missouri. The court took the motion to return the children under advisement.

[Husband] did not consent to the move nor did this court grant [wife] permission to move the children.

[Wife] did not comply with Section 452.377 RSMo. The relocation was not in good faith. The move was not in the best interest and general welfare of the minor children.

Accordingly, the court finds that it is in the best interest of the minor children that [wife] return them to Southeast Missouri within 40 miles of their former residence. Logically, [wife] cannot move back to the house awarded to [husband]. Mississippi County and the area is very rural and [wife] must have some area to resettle with the children.

The award of primary physical custody to wife is supported by the evidence. The 40–mile radius restriction on a place of residence for the children is not an unreasonable hindrance on husband's allowed time with the children. The distance reflects compromise that permits the children to be near enough to husband to permit him to spend frequent and meaningful time with them without requiring wife to reside unduly close to husband. There was evidence that previous attempts by the parties to live near one another had been unsuccessful; that there was considerable tension between them. This court finds no abuse of discretion by the trial

court's award of custody with the restrictions imposed. Point IV is denied.

■ Husband also contends the trial court committed error in determining the amount of child support he was ordered to pay. He asserts in Point III that the trial court erred in calculating presumed child support because it attributed income to husband that "was his separate property received by gift from his family and there was no evidence that [husband's] income from separate property was regular, routine and likely to occur in the future."

In awarding child support the trial court declared:

The evidence showed [wife] to have a monthly income of $18,450.00.[2] The evidence showed [husband] to have withdrawn, since 1994, some $2,237,250.76 from his accounts with Simmons Financial. The last three (3) years the withdrawals have amounted to some $1,481,035.00. The evidence shows his monthly income to be an average of $41,139.00. [Husband] has attempted to lead the court to believe his monthly income is less than $2,000.00, yet his monthly expenses exceed $8,000.00. The court took note of the mortgage payments made by [husband].

The trial court findings included the observation that the parties "enjoyed substantial financial benefits or money received through their respective families"; that this had a positive impact on their ability to support their children. The trial court explained:

The presumed child correct [sic] child support as calculated pursuant to law and Form 14, as submitted by [wife] and

2. Although the trial court findings stated wife's monthly income to be $18,450.00, the copy of the Form 14 attached to the judgment used the figure of $18,564.00 as her "monthly gross income." This discrepancy is not explained in the record. It is, however, *de minimis* for purposes of the issue presented in Point III and, therefore, of no consequence to the issues presented by this appeal.

[husband], is rejected by the Court. The Court has made its own calculation of the presumed correct child support, pursuant to the law and Form 14, hereto attached, said amount is One Thousand Two Hundred TEN Dollars Fifty–Two Cents ($1,210.52) per month. After consideration of all relevant factors pursuant to RSMo. Section 452.340.8 (1994) and Missouri Supreme Court Rule 88.01, the presumed correct child support amount is rebutted as being unjust or inappropriate. After consideration of all relevant factors pursuant to RSMo. Section 452.340.8 (1994) and Missouri Supreme Court Rule 88.01, the Court finds that the reasonable and necessary child support amount is One Thousand Five Hundred Dollars ($1500.00) per month. The Court looks Principally [sic] to the financial needs and resources of the parents and the standard of living the children would have enjoyed had the marriage not been dissolved.

Husband argues that in calculating child support, a court is permitted to consider capital gain income a party received in prior years if there is a realistic expectation that the party would continue receiving substantial capital gain income in future years. Husband contends this is not what the trial court did in this case; that what the trial court considered in its calculation was the amount of money he had withdrawn from his separate funds during the course of his marriage. He contends this was error; that the trial court abused its discretion in the manner in which it calculated presumed child support; that, therefore, the order to pay child support in the amount of $1,500 per month "is unrea-

sonable and unjust, and requires [husband] to pay more than he can reasonably afford in child support."

The trial court calculated husband's gross monthly income by averaging the amount of funds husband withdrew from his Simmons Financial account the three years that preceded trial. Husband withdrew $754,035 in 1998, $269,000 in 1999, and $458,000 in 2,000.[3] Funds husband withdrew from the account were placed in marital bank accounts the parties maintained and used for living expenses. Evidence adduced at trial disclosed that husband's family had deposited money regularly in husband's Simmons Financial account from the early 1980s until the time of the parties' separation. After the parties separated up to the date of trial, husband's family deposited only $10,000 in the account.[4]

In re Marriage of Petersen, 22 S.W.3d 760 (Mo.App.2000), explains:

Child support (and maintenance) awards require consideration of current economic circumstances, Morgan v. Ackerman, 964 S.W.2d 865, 869 (Mo.App. 1998), and the financial resources of the parents. § 452.340.1(2)[, RSMo Cum. Supp.1999]. The term "gross income" is not defined by the rule or accompanying form, but the Directions for Completion of Form 14 provide guidance as what should be included as gross income. Buckner v. Jordan, 952 S.W.2d 710, 711 (Mo.banc 1997). A "relevant factor" which may justify deviation from the presumptive child support amount is the "financial resources and needs of the parents." Rule 88.01(b). Id. at 712.

3.  There was evidence that over a longer period of time, husband's withdrawals from his account totaled $2,237,250.76.

4.  The president of the investment company with which husband maintained an account testified that at one time the value of husband's account totaled $1,500,000, but that the value of the account at date of trial "would be somewhere around $560,000."

The trial court should consider not only a parent's earnings for services rendered, but rather all resources available to him or her. *In re Marriage of Chorum*, 959 S.W.2d 900, 905 (Mo.App. 1997). § 452.340.1. No resource available to a parent is exempt from the obligation to support the children, including the largesse to the parent from a third party. *Margolin v. Margolin*, 796 S.W.2d 38, 44 (Mo.App.1990). *See also Jung v. Jung*, 886 S.W.2d 737, 741 (Mo. App.1994), and *Taranto v. Missouri Dep't of Soc. Services*, 962 S.W.2d 897, 900–901 (Mo.App.1998).

*Id.* at 764. Just as no resource is exempt for purposes of considering an award of maintenance, *Sturgeon v. Sturgeon*, 849 S.W.2d 171, 175 (Mo.App.1993), no resource is exempt for purposes of determining what is a reasonable amount for a parent to pay for child support. *See Thurman v. Thurman*, 95 S.W.3d 172, 176 (Mo. App.2003); *Word v. Peterson*, 57 S.W.3d 894, 901 (Mo.App.2001). Directions to Form 14 point out that although "gross income," for purposes of calculating presumed child support, includes specified categories of income listed, it is not limited to those items.

Although husband's argument in complaining about the amount the trial court calculated as his "gross income" refers to capital gains, this court finds no reference by the trial court to capital gains in its ascertainment of the gross income figure it used to calculate presumed child support. Furthermore, although the trial court was required to ascertain the amount of presumed child support, it was not required to, and did not, award that amount. At the time of trial, the schedule required to be used to calculate presumed child support provided for a maximum monthly gross income of $15,000. Although the parties' gross income, as determined by the trial court, exceeded the amount for which the schedule provided, the trial court considered what the maximum would be had the parties' gross income fallen within the range for which the schedule provided.

The trial court found, considering all relevant factors, that the schedule amounts were unjust or inappropriate. *See* Rule 88.01(b). On that basis, husband was ordered to pay child support in the amount of $1,500 per month. This court finds no abuse of discretion in making that award. Point III is denied.

Husband's remaining points on appeal, Points II and V, are directed to the distribution of marital property. Point II is directed to the order that husband pay wife $150,000 for her interest in the marital home that was awarded to husband. Point V complains that the trial court erred in not allowing testimony of an appraiser husband employed to value the parties' household goods.

The trial court valued the marital property it awarded wife at $470,837.28. It valued the marital property awarded husband, after deducting debts it allocated to him and a cash payment of $150,000 husband was ordered to pay wife, at $541,251.60. Marital property awarded husband included the family home in Mississippi County valued at $600,000, less an encumbrance secured by that property of $231,350, for a net value of $368,650.[5]

■ Point II asserts that the trial court abused its discretion in the award of marital property; that it "failed to consider the source of funds used to construct the mari-

---

5. Husband agreed that the value of the home at the time of trial was $600,000 less an encumbrance of $231,349.90. The trial court used the sum of $231,350 as the amount of the encumbrance.

tal home." Husband argues the trial court's distribution of marital property resulted in his incurring a substantial loss on his contribution to the cost of the residence while "giving [wife] a 150% return on her contribution."

In distributing marital property, the judgment declared with respect to the cash payment it directed husband to make to wife:

> Wife shall have a Judgment against [husband] for $150,000.00, which shall be a lien against the family home here in after [sic] awarded to [husband], and shall be paid on or before July 1, 2002, with no interest. The purpose of this sum is to accomplish an equitable division of marital property.

The net distribution of marital property resulted in an award of 53.5% of the net value of marital property to husband and 46.5% to wife.

Husband contends he contributed $1.2 million toward construction of the marital home and wife contributed $100,000.[6] He argues that the trial court's award of the marital home to him, less the debt secured by it, together with the order that he pay wife $150,000 resulted in his incurring a loss on funds he contributed to the acquisition and construction of the home of $918,350 (that the net value of the home as distributed was $218,650), whereas wife received a return of her entire contribution plus an additional $50,000.

Husband does not contend the marital residence was not marital property. He argues that because his assets were the source of most of the funds used to construct the house, he should not have been ordered to pay wife $150,000. He contends this amounted to an inequitable diversion of his funds to wife.

■ Once a trial court determines property is marital, its division is not subject to the source of funds rule. *Lance v. Lance,* 979 S.W.2d 245, 248 (Mo.App.1998). Rather, the trial court has the duty to consider all relevant factors, including "(1) the economic circumstances of each spouse at the time of the property division and the desirability of awarding the family home to the custodial parent; (2) the contribution of each spouse to the acquisition of property; (3) the value of each spouse's non-marital property; (4) the conduct of the parties during the marriage; and (5) the custodial arrangements for the minor children." *Cohen v. Cohen,* 73 S.W.3d 39, 53–54 (Mo. App.2002). *See* § 452.330.1, RSMo 2000.

*Cohen* notes, however, that the statutory factors it identifies are not exclusive; that there is no precise formula determining the factors a trial court is to consider. *Cohen* observes, "There are two guiding principles, however, that must be followed in dividing marital property pursuant to § 452.330:(1) that property division should reflect the concept of marriage as a shared enterprise similar to a partnership; and (2) that property division should be utilized as a means of providing future support for an economically dependent spouse." *Id.* at 54. In this case, neither spouse was economically dependent on the other. Thus, of the "two guiding principles" enunciated

---

**6.** Husband testified that the money he contributed to the construction of the home came from his Simmons Financial account. Those funds, however, were deposited in the parties' marital bank accounts and construction costs and costs of furnishings for the house were paid from those accounts. The same accounts were used for the parties' living expenses. In addition to funds from husband's Simmons Financial account, the parties deposited earned income as well as gifts from both of their families in the accounts. Husband testified that wife participated in the design of the home but was not nearly as enthusiastic with it as he was.

in *Cohen,* only the concept of marriage as a shared enterprise has significance.

Husband withdrew considerable amounts from his Simmons Financial account during the marriage and during the time the parties were constructing the marital residence. These amounts were deposited in joint marital bank accounts. Wife also received significant funds from various sources, including family gifts, during the time the marital residence was being constructed. The trial court determined her monthly income at $18,450, of which approximately $1,000 was earned income. Wife also maintained an account with Simmons Financial. She withdrew $148,000 from that account. All of the funds were placed in the parties' joint marital accounts that were used to pay living expenses and to provide funds for construction of the marital home. The use of funds by the parties for the construction of the marital residence was a shared enterprise, just as their use of funds for their other marital expenses was a shared enterprise.

Husband argues further that the trial court did not consider wife's non-marital property in awarding marital property. The trial court set aside non-marital property valued at $300,349.78 to wife and non-marital property valued at $563,939.89 to husband. Additional non-marital property of husband's interest in three family trusts and a family corporation were set aside to husband as non-marital property but were not valued by the trial court.

■ The trial court acknowledged the applicability of statutory factors relevant to distribution of marital property and stated it considered those factors. "We presume that the trial court's division of property is correct, and the party challenging the division bears the burden of overcoming this presumption." *Id.* at 53. A trial court is granted great flexibility and discretion in its division of marital property. *Id.* The trial court did not abuse its discretion in distributing marital property and, as part of that distribution, in ordering husband to pay $150,000 to wife to effect an equitable division of that property. Point II is denied.

Husband's remaining point, Point V, complains that "[t]he trial court erred in excluding the testimony and report of [husband's] household goods appraiser because such testimony was admissible and its exclusion resulted in a division of marital property that was against the weight of the evidence in that the trial court had no basis for determining the value of the parties' household goods."

■ The trial court valued the parties' household goods at $187,500. This was consistent with the value wife placed on the property in the statement of property she prepared that was admitted in evidence. As an owner of the property, wife was qualified to state an opinion as to its value. *In re Marriage of Holden,* 81 S.W.3d 217, 223 (Mo.App.2002); *Farley v. Farley,* 51 S.W.3d 159, 164 (Mo.App.2001). The evidence wife gave is sufficient to support the trial court's valuation. *In re Marriage of Colley,* 984 S.W.2d 163, 173 (Mo.App.1998).

The evidence husband tendered that the trial court refused was a valuation of marital property made by Michael Yeager, a certified appraiser of personal property. The value he sought to place on the property was $53,290. Mr. Yeager's valuation was based on "forced liquidation" values. "Forced liquidation" for purposes of those values was stated to be the amount the property would sell for if forced to sell no matter the offer. Mr. Yeager did not offer a valuation of the property using fair market value.

"Fair market value" is "the price which the property in question would bring when offered for sale by one willing, but not obliged to sell it, and it is bought by one willing to purchase it, but who is not compelled to do so." *In re Marriage of Holden, supra.* The appraiser whose valuation husband sought to have admitted in evidence did not use fair market value as the basis for his appraisal. The trial court did not abuse its discretion in refusing to admit the evidence provided by Mr. Yeager that was based on forced liquidation. *See Wagoner v. Wagoner,* 76 S.W.3d 288, 293 (Mo.App.2002) (division of marital property reversed when trial court valued property based on evidence of value other than fair market value). Point V is denied. The judgment is affirmed.

SHRUM, J., and RAHMEYER, C.J., concur.